### TABER LUMBER CO. v. O'NEAL et al.

(Circuit Court of Appeals, Eighth Circuit. March 14, 1908.)

No. 2,599.

1. APPEAL AND ERROR—REVIEW—FINDINGS OF FACT—CONFLICTING EVIDENCE.

Where there is abundant evidence from which a fact found by the trial judge may have fairly been found, such finding will be sustained on appeal, unless an obvious error has occurred in the application of the law or a serious mistake in the consideration of the proof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appeal and Error, §§ 3983–3989.]

2. ESTOPPEL—CONSENT TO DELAY—PENALTY.

Where complainants in any manner secured defendant's consent to complainants refraining from shipping logs under a logging contract for five days to enable complainants to change certain spur tracks, and complainants acted on such consent, defendant was estopped to claim a contract penalty for such delay.

3. LOGS AND LOGGING—CONTRACT—CONSTRUCTION.

Where a logging contract provided that complainants should have the right to log certain land except the west half of township 60 north, of range 18 west, "unless railroad spur is built to Sand Lake," such provision contemplated a spur which, whether built by complainants or some one else, should be one which complainants could lawfully use as a matter of right to execute their contract, and hence the construction of such spur by a private corporation as a private enterprise to log other lands

in the vicinity was insufficient to entitle complainants to log the west half of such township.

**4. CONTRACTS—MUTUALITY.**

Where a contract to log certain land excepted the west half of a township, unless a railroad spur was built to a certain lake, the contract, in so far as the excepted tract was concerned, was unenforceable for want of mutuality.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Adverse Possession, §§ 21–40.]

**5. SAME—CONSTRUCTION.**

Under the rule that a contract should receive a reasonable construction to execute the real intention of the parties, if a given act is not within such intention, it should not be held to be so merely because it is within the letter of the written instrument.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, § 730.]

**6. ACCOUNT STATED—OBJECTION TO CHARGE.**

Defendant claimed a charge against complainants for demurrage by letter dated May 19, 1903, to which complainants replied on May 23, 1903, objecting to such charge, and asserting their right to cease loading the cars in question during the time in April for which the demurrage was charged. *Held*, that such charge did not constitute an account stated so as to estop complainants from thereafter contesting the same.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Account Stated, § 24.]

**7. DAMAGES—FUTURE PROFITS.**

Future profits on an alleged breach of contract are recoverable only when they are the result of special circumstances known to the parties at the time the contract was made, and when they are the natural and direct result of a breach and can be ascertained with reasonable accuracy.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 74–76.]

**8. SAME—EVIDENCE.**

On a cross-bill for alleged breach of a logging contract, evidence *held* to sustain a finding that complainants at the time the contract was made were not informed that their failure to get out the required quantity of logs each season would result in special damage to defendant, so as to entitle the latter to recover for loss of future profits.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, § 513.]

Appeal from the Circuit Court of the United States for the District of Minnesota.

W. D. Bailey (Washburn and Mitchell, on the brief), for appellant.
J. N. Searles, for appellees.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

ADAMS, Circuit Judge. This was a suit in equity brought by Eugene O'Neal and James O'Neal, constituting the firm of O'Neal Bros., against the Taber Lumber Company to reform a written contract and recover damages resulting from an alleged breach of it. The reformation prayed for concerned two provisions which, it is claimed, did not express the true intent of the parties. The desired reformation was allowed as to one provision and denied as to the other. As no error is assigned to that action of the court no further reference need be made to it, and the contract as reformed will hereafter alone be considered.

It was composed of a written proposition made by complainants and accepted by defendant, and is as follows:

"Stillwater, Minn., Nov. 1, 1902.

"We hereby agree to log all timber belonging to the Taber Lumber Company in township 61 North, of range 16 West; township 61 North, of range 17 West; township 61 North, of range 18 West; township 60 North, of range 17 West; township 60 North, of range 18 West; township 59 North, of range 17 West; township 59 North, of range 18 West—all in St. Louis county, Minnesota, excepting sections 1 and 11 in township 59 North, of range 17 West, and sections 23, 25, and 26 in township 59 North, of range 17 West, and except the western half of township 60 North, of range 18 West, unless railroad spur is built to Sand Lake. Timber to be loaded on cars at rate of 20 cars per day beginning January 1st each year until not less than 10,000,-000, nor more than 12,000,000 feet are shipped, shipments to be continuous until full amount is shipped in each year. In case of our failure to have 40 cars loaded each alternate day, we agree to pay the Taber Lumber Co. whatever penalty they are forced to pay railroad company, unless such failure is caused by D. V. & R. L. Ry. Co.'s failure to deliver us cars, and in case of the railroad company's failure to furnish us the forty cars each alternate day, the Taber Lumber Co. agrees to pay us the same penalty. The price for the entire tract, as above, to be $5.50 per thousand delivered on cars, we to bear all expenses, both for material and construction in building any spurs which we may decide to use in getting out logs. The Taber Lumber Co. to furnish 2½ miles of steel rails with the necessary angle bars for the same. The Taber Lumber Co. to advance us from $10,000 to $12,000 between November 1st, 1902, and January 1, 1903, this amount to be deducted from last payment made for logging season of 1902–3, and we to pay 6 per cent. interest. Terms of payment: Settlement to be made in cash on the 15th of each month for logs loaded on cars during preceding month. Payments to be based on surveyor general's scale as logs are loaded on cars, cost of scaling to be divided equally between Taber Lumber Co. and ourselves. All logs to be cut according to directions of Taber Lumber Co. and under their supervision, and we will board, free of charge, any men which the Taber Lumber Co. may place in camp for the purpose of looking after their interests and supervising cutting.

"O'Neal Bros.

"Accepted. Taber Lumber Co., by E. Carroll Taber."

Complainants claimed that they performed their part of the contract by cutting the logs and delivering them aboard the cars as required with the exception of such as grew on the western half of township 60, range 18, last referred to in the contract, and that there became due therefor the sum of $49,149.74, of which only $48,095.24 had been paid, leaving a balance of $1,054.50 still due. Complainants also claimed that they were entitled under the terms of the contract to cut the logs from the western half of township 60, range 18, and to receive as compensation therefor the price fixed by the contract of $5.50 per thousand feet; that defendant did not permit them so to do, and they were thereby unlawfully deprived of the profit which they might have made by doing it, claimed by them to be $17,500. Defendant denied owing the claim of $1,054.50 because of demurrage which it was required to pay the railway company for cars detained, which it claimed the right to charge and had charged to complainants to balance their account.

With respect to the second claim made by complainants, defendant's contention is that, because no railroad spur was built to Sand Lake within the meaning of the exception found in the first part of the contract, complainants had no right to cut the logs from the western half of

township 60, range 18, and if they had such a right there was no competent proof of damages sustained by them·in not being permitted to exercise the right. Defendant also claimed that an account was stated between it and complainants at the end of each logging year and that complainants by failing to object thereto are estopped from making the claims now asserted by them. Defendant in its cross-bill claimed special damages in the sum of $10,000 from complainants for loss of profits alleged to have been occasioned by complainants' failure to cut and deliver 10,000,000 feet of lumber as required by the contract during the first logging year of 1902 and 1903. The Circuit Court allowed complainants $921.50 on their first claim and $5,250 on their second claim, making a total of $6,171.50, and allowed nothing to defendant on its cross-bill. The appeal brings up for review these rulings of the court.

As complainants have not appealed from the allowance to them of $921.50 instead of $1,054.50 on their first claim, the controversy now concerns the former sum only. Was that amount due complainants as a balance for logs actually shipped? It was, unless defendant was justified in charging complainants with demurrage paid by it to the railway company for cars unnecessarily detained by them during the five days of April 6, 7, 8, 9, and 10, 1903. The learned trial judge disposed of this item by saying:

"The facts seem to be that complainants requested a cessation of cars during these five days in order to enable them to change the spur tracks and that this was assented to by defendant. It seems to me, therefore, that defendant ought not to withhold any compensation that was due complainants on account of that demurrage and therefore, upon that ground alone, the complainants are entitled to recover what was charged against them and withheld for demurrage during those five days, which amounted to $921.50."

There is some conflict in the proof as to whether defendant assented to complainants' cessation of shipment for the days in question, but there is abundant evidence from which that fact could fairly be found. In such case the finding of the trial court is presumptively correct and should be followed unless an obvious error has occurred in the application of law or a serious mistake has been made in the consideration of the proof. Mastin v. Noble (C. C. A.) 157 Fed. 506, and cases cited.

Whether the contract of November 1, 1902, gave complainants a right to refrain from shipping for five or any other number of days or not, it is clear that if complainants afterwards, in any manner, secured the consent of defendant to refrain from shipping during those days and acted upon that consent, defendant is estopped from penalizing them for doing so. We see no reason for disturbing the conclusion reached on this item by the Circuit Court.

Whether the next item of $5,250 was properly allowed to complainants depends upon the true meaning of the contract of November 1, 1902. By clear language complainants were first given the right to clear the whole of township 60, range 18, together with other townships and ranges; and by equally clear language the western half of township 60 was excepted from the operation of the contract. Complainants acquired no right to clear that tract, and defendant incurred no obligation to complainants therefor "unless railroad spur is built to

Sand Lake." In other words, by an exception to the exception, the western half of township 60 was brought within the operation of the contract, provided, and upon the condition, that a railroad spur should be built to Sand Lake. The burden rested upon complainants to show that this spur had been built. Have they done so? In answering this question regard should be had to the facts and circumstances surrounding the parties at the time the contract was made.

It appears that the Duluth, Virginia & Rainy Lake Railway Company had constructed and was operating a line of railway, which we will hereafter call the Rainy Lake Railway, running in a northerly and southerly direction, substantially midway through the lands first described in the contract and reasonably near to all of them. This the pleadings show, and there is abundant evidence that both parties had reference to this railway in the various provisions of their contract. The timber last described, located on the western half of township 60 was some four or five miles distant from the main line just referred to, and speaking generally, it was located in close proximity to Sand Lake. Complainants by the contract in question undertook to deliver all logs cut by them upon cars standing on the main line or upon spurs connecting with the main line, and they undertook to build such spurs as they should find to be necessary or advisable in the prosecution of their work. Of the necessity or advisability of doing that, however, complainants were left to judge. Doubtless the distance of the western half of township 60 from the main line and the expense of building a spur to it had much to do with the first exception found in the written proposition of complainants. They, however, by the proviso or condition referred to, reserved the right to cut the logs from that tract if they or any one else should decide to build and should build a spur to Sand Lake. It must have been the intention of the parties that such a spur, whether built by complainants or anyone else, should be one which complainants could use lawfully and as a matter of right for the purpose of executing their contract. If complainants had decided to build it and had done so, it would have served their purpose. They also could have made use of it if any incorporated railroad company had built it for the purpose of operating it as a common carrier of freight. In either event they would have been able to get out the logs from the western half of township 60. If any private person or corporation had built it, it would have availed them nothing unless they could use it. This sole and only purpose which the proposed spur was to serve must be kept constantly in mind. The only spur actually constructed was built by the Virginia Lumber Company, which owned large bodies of timber in the region of Sand Lake. That company, some time after November 1, 1902, built a spur from the main line to Sand Lake, but built it for its own use exclusively. It was a private enterprise, not designed as a common carrier and never held out, operated, or used as such. Complainants, therefore, could not of their own motion and as a matter of right make use of it to secure transportation to the main line, and they did not secure or undertake to secure by private agreement from the Virginia Company the general right to use it for the transportation of such timber as they might cut from the tract in question. The coincidence that the Virginia Company employ-

ed the same construction company to build its spur which the Rainy Lake Railway Company had employed to construct its main line is unimportant in view of the conceded facts already narrated. It is clear that the spur constructed was not the railroad spur contemplated by the contract. Complainants, as a matter of right could not use it, and even if they might have made a private contract for its use on some terms, defendant clearly could not have compelled them to fix terms and make such contract. Want of mutuality in this respect is also fatal to complainants' present claim.

Literally speaking this private spur of the Virginia Company was "a spur built to Sand Lake," but within the spirit and purview of the contract it was far from it. Contracts should receive a sensible and reasonable construction to the end that the real intention of the parties may be executed. If a given act is clearly not within the intention of the parties it should not be held so, merely because it is within the letter. Pressed Steel Car Co. v. Eastern R. Co., 57 C. C. A. 635, 121 Fed. 609, and cases cited. The same rule is applicable to the construction of statutes. United States v. Kirby, 7 Wall. 482, 19 L. Ed. 278; Holy Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226; Johnson v. Southern Pacific Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363.

We think the learned trial judge erred in awarding to complainants the item of $5,250. Complainants failed to show a right to clear the western half of township 60 within the true meaning of the contract. This conclusion renders unnecessary any consideration of the other defense that complainants sustained no damages, even if they were deprived of the right to cut the timber.

Concerning the claim of estoppel arising out of the rendition of accounts each year by defendant to complainants, little need be said. The claim of $921.50 only can be affected by its determination either way. The doctrine of estoppel by the receipt and retention, without objection, of an account stated rests on the presumption that the debtor's failure to object to it within a reasonable time is a voluntary admission of its correctness. Patillo v. Allen-West Commission Co., 65 C. C. A. 508, 131 Fed. 680. It will be remembered that the claim for demurrage originally asserted by defendant against complainants was $1,051.54. A claim or charge for this amount against complainants was made by defendant by letter of date May 19, 1903. Complainants did not admit the correctness of the charge as made. Instead of doing so they immediately, by a letter of date May 23, 1903, objected to it and asserted their right to cease loading cars during the five days in April for which the demurrage was charged. This protest effectually disposes of the claimed estoppel.

The cross-bill claims special damages resulting from complainants' failure to cut and deliver to defendant 1,105,370 feet of the quantity stipulated by the contract to be delivered the first year. It avers that defendant required the total amount of 10,000,000 feet per year for the operation of its mills; that a failure to get it would occasion a shut down and prevent defendant from supplying its customers with lumber; that complainants knew of these facts when the contract was

made and entered into it in view of the consequences specified, in case of a breach on their part. It further avers:

"That by reason of the failure of the plaintiffs to deliver the full ten million feet of logs to this defendant during said year, this defendant's mill was necessarily idle during a considerable portion of the year and of the sawing season thereof, and this defendant was short of lumber which it desired and required for its trade, and which its trade demanded, by reason of which this defendant suffered great loss and damage in a sum exceeding the sum of ten thousand dollars."

This cross-bill presents a claim for the gain and profits which defendant lost by not having the logs in question to saw and the lumber which might have been produced therefrom to sell. This was a claim for future profits which falls within the denomination of special damages, to which one is entitled if such damages are within the contemplation of the parties at the time the contract is made. Such damages, as distinguished from those ordinarily sustained, can be recovered only when they are the result of special circumstances known to the parties at the time the contract was made, when they are the natural and direct result of a breach, and when they can be ascertained with reasonable accuracy. Cent. Coal & Coke Co. v. Hartman, 49 C. C. A. 244, 111 Fed. 96; Farmers' Loan & Trust Co. v. Eaton, 51 C. C. A. 640, 114 Fed. 14; McDonald v. Kansas City Bolt & Nut Co., 79 C. C. A. 298, 149 Fed. 360, 8 L. R. A. (N. S.) 1110.

Proof of knowledge, by the party charged to be in default, of the special circumstances which make exceptional damages likely to follow is an insuperable prerequisite to liability therefor. This proof the defendant undertook to make in the present case. It consisted of the testimony of two witnesses, which, when critically considered, discloses a good deal of uncertainty as to what defendant's officers really stated to complainant concerning their intended use of the logs when cut. One of the complainants who conducted the negotiations with defendant emphatically contradicts the interpretation now put upon that testimony. Moreover, the good faith of the claim made in the cross-bill is challenged by the fact that although it accrued in the spring of 1903, at the end of the first year's logging operations, and although the parties had intimate business relations for two years thereafter, it was never called to the attention of the complainants or much less demanded of them, until after this suit was instituted in 1906. It looks much like an afterthought. The learned trial judge disposed of the claim as follows:

"Although there is evidence on the part of the defendant that the nature of its trade was stated to complainants, and the fact that it was a manufacturer of lumber, and that its mills required a certain amount of logs, which would necessitate the cutting and delivery of at least ten million feet of logs on the part of the complainants, yet that testimony is denied by complainants, and there seemed nothing in the circumstances of the case to render it probable that such statements were then in fact made; and as the testimony is balanced with respect to the statements of the witnesses, I am obliged to hold that such statement or fact is not proven, and therefore that no substantial damages can be allowed, and that the counterclaim must be disregarded."

After a careful consideration of the proof we are unable to say that any mistake was made by the trial court in this particular. It results

that the decree below in so far as it reformed the contract of November 1, 1902, was correct; but in so far as it awarded to the complainants a judgment for $6,171.50 was erroneous. The only damages to which complainants are entitled on the reformed contract are $921.50 with interest from the time that sum should have been paid, which was May 19, 1903. The decree is therefore reversed, and the cause is remanded to the Circuit Court, with directions to award a decree against the defendant for the sum of $921.50 with interest as already indicated, in lieu of the amount of $6,171.50, and in all other respects to enter the decree as before.

SANBORN, Circuit Judge (concurring). I concur in the result in this case, but my reason for the conclusion that the complainants cannot recover damages because they were prevented from logging the timber on the western half of township 60 differs from that of the majority of the court. It is that a careful reading and analysis of all the evidence on the subject have convinced me that the complainants failed to prove by a fair preponderance, or by any preponderance of it, that they sustained any damage by reason of their deprivation of an opportunity to cut and deliver that timber. Their right to log that timber seems to me to be established. The contract between the parties was that they should log it if a "railroad spur is built to Sand Lake." A railroad spur was built to Sand Lake during the term of the contract. The argument that while the parties contracted in writing that the complainants should log the timber if a "railroad spur is built to Sand Lake" their agreement was that they should log it only if a "railroad spur is built to Sand Lake" *by the Duluth, Virginia & Rainy Lake Railway Company, or by any other incorporated company for the purpose of operating it as a common carrier of freight,* is not persuasive to my mind. While the main line of the railroad was owned by the Rainy Lake Company, it was in the possession of the construction company in process of building. It had never been turned over to or accepted by the railroad company, and the construction company which was building it for the railway company was operating it. The business on the railroad was construction and logging. The same construction company built for the Virginia Company, a logging company, and operated the spur to Sand Lake. A part of the logs cut by the complainants under their contract were drawn out over a portion of this spur. The contract was a logging contract, the spur necessary to bring out the logs was a logging spur, and the spur built was a logging spur. There is no evidence that the Virginia Company, or the construction company, refused, or would have refused, to permit the use of this spur for a reasonable compensation by the complainants, or the defendant, for logging purposes, and there is no legal presumption to that effect. In my opinion it filled the condition of the contract and gave the complainants the right to log the timber.

The addition to the conditional term of a contract which is clear and unambiguous, which parties have selected and written down to express their agreement on the subject and which has been fully complied with as it reads, of other conditions like those in italics above, by construction after the event whereby a compliance according to the reading of

the expressed condition becomes no compliance, seems to me to impinge upon the familiar rules that where the terms of a contract are plain no room is left for construction, that the intention of the parties should not be assumed and imported into their written agreements, but should be drawn from the writings, and that the common meaning of clear terms should not ordinarily be discarded for curious or hidden significations which the ingenuity of counsel and the exigencies of their case develop.