AtkiNSON, Judge,
delivered the opinion of the court:
The addendum to the specifications reading as follows: “In the case of the building joining the north line of the site, the underpinning of the rear main walls must be carried to rock by a method satisfactory to the Supervising Architect,” was sufficient to attract the contractor’s attention to something being required which might be additional to the mere general terms of the specifications expressed in tbe terms “The walls, etc., will have to be removed and the excavation made in such a manner as not to endanger adjoining property * * * and all necessary shoring, underpinning, etc., in connection therewith must be done.”
There were two buildings joining (or practically joining) the north line of the site. This fact was open to ordinary observation — it was obvious — and no question is raised upon the fact that the condition was alike known to both parties to the contract. The insistence of the claimant is that inasmuch as the specifications, with the addendum inserted referred to “ the building ” he understood and had a right to understand that only one of the said two buildings was included in the terms of his bid and contract and that therefore the Supervising Architect had no right to require him to underpin the building No. 25 Pine Street. In other words, he contends that as the contract, of which the specifications are a part, used the word building instead of buildings, he was required by it to underpin one and not two buildings.
If the contract between the parties clearly refers to a particular building the main rear wall of which was to be under *567 pinned, then claimant could not be required under the contract in question to underpin another and distinct building under the general provision of the contract that “the decision of the Supervising Architect as to the proper interpretation of the drawings and specification shall be final,” because in such case the agreement between the parties would control, and being clear and distinct would not call for interpretation, or authorize a decision by the Supervising Architect contrary to its terms. United States v. Stage Company, 199 U. S., 414.
But it has been repeatedly held that parties to a contract may agree to submit differences of views in the interpretation of drawings and specifications to the decision of an architect or engineer and the validity of such an agreement is unquestionable in the absence of bad faith, fraud, or a failure to exercise an honest judgment. Kihlong's case, 97 U. S., 398; Sweeney’s case, 109 U. S., 62; Barlow's case, 184 U. S., 123, 133.
The court should, in construing a contract, ascertain the intention of the parties and to that end will as far as possible ascertain the situation of the parties as well as the purposes had in view. Merriam v. United States, 107 U. S., 437, 441; Brawley's case, 96 U. S., 168, 173; Richmond Co. v. Eureka Co., 103 U. S., 839, 846.
And we must look to all of the contract in order to find its intention, for it is not allowable to disassociate a single phrase, term, or word from the context and give to it a meaning independent of the other terms of the instrument. O'Brien v. Miller, 168 U. S., 287, 297.
The work contemplated by the advertisement by the Government involved excavation in an area surrounded by buildings. On the east was the Gallatin Bank Building, the foundations of which extended deeper than the proposed excavation for the annex to the assay office building; on the west was the subtreasury building; on the south the assay office building to which the addition was being made; and on the north two buildings, numbered, respectively, 27 and 29 Pine Street and 25 Pine Street, the rear foundations of which did not extend to the depth of the proposed exea- *568 vation. The specifications admonished the contractors as follows:
“ The bidders should visit the site and fully inform themselves of the character of the same and the conditions under which the work is to be performed, and failure to do so will in no way relieve the successful bidder from the necessity of furnishing any materials or performing any labor that may be required to complete the work in accordance with the true intent and meaning of the specifications and drawings without additional cost to the Government.”
Under the head of “ Excavation ” it is, among other things, stated:
“ Certain portions of the old foundation walls, etc., have been left in place as retaining walls in connection with adjoining buildings; the removal of these walls and the north wall and so much of the present front building as may be necessary to install work under this contract and such other excavation in connection therewith as may be necessary are to be included.”
The claimant’s president visited the site of the proposed work, as did also his engineer. The surrounding conditions were known to them. They knew that there were two buildings, the rear of which adjoined the site; one of these, 27 and 29 Pine Street, was built up of brick or masonry from the top of a one-story extension, while the other from the top of the first-story extension was constructed of metallic sheets supported on the framework of the building. The weight at the rear of the building No. 25 Pine Street was carried on pillars at either end of the side walls, and the south ends of these walls were several feet nearer the proposed excavation than was the rear wall of the other building.
A question which naturally arises under these conditions is why did the contractor determine that the rear wall of No. 27 and 29 Pine Street was to be underpinned and No. 25 was not to be underpinned? He says the contract called for underpinning “ the rear walls of a building,” but which building? The building had but one rear wall, and the specifications called for underpinning rear walls of a build *569 ing. The extension of the east and west walls of No. 25 Pine Street toward the site of the proposed excavation and the fact that the weight of the rear wall was carried by means of a girder to the corners had, it seems to us, the effect of making those corners or pillars carry more weight than would have been superimposed if the rear wall had extended to the ground for support, and as a consequence any excavation near these corners would be attended with more danger to the building or walls, tending, as it would, to remove lateral support. The proof shows that these walls should have been underpinned. If the contractor was uncertain as to the meaning of the addendum to the specifications he could, upon inquiry before bidding, have been informed by the Supervising Architect.
He chose to act without making inquiry, and we can not agree that the contract authorized him to select the building to be underpinned, or that it meant that only one rear wall was to be underpinned. Reading the whole contract, it seems to us its intention was to provide for the underpinning which the contractor was subsequently required by the architect to do.
While we doubt the relevancy and competency of the testimony adduced tending to show that the engineer who suggested the addendum to the specifications provided in his memorandum for the underpinning of the walls of the two buildings, and that when this suggestion was written out “ buildings ” were expressed in the singular number, we do not see, if relevant or competent testimony, how the said fact can aid the claimant, because it plainly shows that the intention from the beginning was to require the underpinning of both buildings and that by a mere clerical error the word intended to be used as denoting a plural was made to denote a singular number.
Our conclusion is that the petition should be dismissed, and it is so ordered.