## 11213

### CHATFIELD-WOODS CO. v. HARLEY

### (117 S. E., 539)

1. APPEAL AND ERROR—SUBMISSION TO JURY OF QUESTION FOR COURT HARMLESS ERROR, JURY DECIDING IT CORRECTLY.—The submission of a special issue to the jury as to. the construction of a contract is a harmless error, where the jury construed it the way the Court would have been justified in construing it.

2. MASTER AND SERVANT—CONTRACT FOR SHARING IN PROFITS CONSTRUED.—Though a literal interpretation of an employment contract would give a salesman 40 per cent. of the profit above $12,000 whenever the profits reached that amount, *held* in view of the circumstances, as well the course of dealings between and the intentions of the parties, that the profits for a single year must exceed that amount before he would be entitled to participate therein.

3. CONTRACTS—PURPOSE OF EXECUTION AND INTENT OF PARTIES PREVAIL OVER WORDS OF AGREEMENT.—The subject-matter of a contract and the purpose of its execution are material to the ascertainment of the parties' intention and the meaning of the terms they use, and when these are acertained they prevail over the dry words of the agreement.

4. CONTRACTS—SHOULD NOT BE CONSTRUED SO AS TO LEAD TO ABSURD RESULTS.—Intruments should receive a sensible and reasonable construction, and not such a construction as will lead to absurd consequences or unjust results.

5. EVIDENCE—PAROL EVIDENCE ADMISSIBLE TO SUPPLY OMISSION IN WRITTEN CONTRACT.—In an employment contract, where there is no period fixed by the contract for the adjustment of the commissions account, parol evidence is admissible to supply that omission.

6. MASTER AND SERVANT—BASIS OF ESTIMATING COMPENSATION.—The salary, and not the salary plus the expense account, *held* the basis for estimating compensation.

Before RICE, J., Spartanburg, January, 1922. Affirmed.

Action by Chatfield-Woods Co., against C. S. Harley. From a directed verdict for plaintiff defendant appeals.

*Messrs. J. Hertz Brown* and *Carlisle, & Carlisle,* for appellant, Cite: *Judge should have construed contract without regard to construction by the parties:* 105 S. C., 107; 114 S. C., 32; 13 C. J., 548. *Courts can enforce, not make contracts:* 112 S. C., 405; 112 S. C., 425. *Issue in claim and delivery is right to possession at time of commencement of action:* 82 S. C., 198; 76 S. C., 504; 42 S. C., 125. *Value is for the jury:* Code Proc. 1912, Sec. 321; 32 S. C., 184.

*Messrs. Lyles, Daniel & Drummond* for respondent.

May 8, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action commenced in the Court of Common Pleas for Spartanburg County on January 1, 1921. The complaint states two alleged causes of action: (1) Claim and delivery of an automobile under mortgage by defendant to plaintiff to secure the payment of a note dated July 18, 1919, for $1,275, due December 15, 1920, with 6 per cent. interest from date, with attorney's free of $50 in the event of collection by levy or suit, upon which there was claimed to be due on November 1, 1920, icluding interest, attorney's fee, and costs of seizure, the sum of $674.46. The automobile was sold at public outcry and realized $389, leaving a balance unpaid of $285.46; (2) balance due on open account for moneys advanced of $144. The answer contained a denial that the note was due; an allegation that the seizure of the automobile was unlawful, willful, and wanton, and constituted a conversion to the defendant's damage $2,000; an admission of the advances alleged, and an allegation that the defendant was entitled to credits in addition to those allowed; and a counterclaim of $1,933.48 on account of commissions on gross profits derived from business secured by the defendant as salesman under the contract of employment.

The case came on for trial before Circuit Judge Rice and a jury at January term, 1922, where the following facts which appear to be undisputed developed.

On October 3, 1918, the plaintiff and the defendant entered into a contract by which the plaintiff employed the defendant as a traveling salesman. The contract was evidenced by correspondence between them and was substantially that the defendant would devote his entire time in the sale of the plaintiff's goods in certain territory in South Carolina and Georgia; that his salary should be $250 per month and traveling expenses, not to exceed $200 per month on an average for the year. It contained also the following provision, which is one of the points of irritation between the parties:

"We further agree to allow you a commission of 40 per cent. in excess of $12,000 gross profits, after all deductions for freight allowances, etc., have been made."

The arrangement between them was to date from October 1, 1918, and to be subject to cancellation by either party upon 30 days' notice in writing. During the summer of 1919 the plaintiff furnished the defendant $1,275 in cash with which to purchase an automobile for use in traveling for the plaintiff, and the defendant secured the same by executing the note and mortgage above described. After the purchase of the automobile, plaintiff agreed to allow the defendant, in addition to the salary and expenses agreed upon, the sum of $30 per month for the upkeep of the car. On October 30, 1919, the plaintiff wrote defendant as follows:

"We are crediting your account now with $480 per month and charging $50 against your automobile, leaving $430 due you each month," and stipulating that remittances of $215 would be made semi-monthly to him. (The $480 was evidently made up of salary, $250, expenses, $200, and upkeep of car, $30. Defendant continued in the plaintiff's employment until October 22, 1920, when he was discharged.

The details of the plaintiff's second cause of action for moneys advanced are not set forth in the record, which, however, contains the following statement:

"It is admitted that, after crediting defendant upon his open account with $480 for the month of October, there remained a balance against the defendant of $144."

The point of difference between the parties as to this matter is this: The contract calls for 30 days' notice before discharge; the discharge occurred on October 22, 1920; the defendant was entitled to his compensation until November 22, 1920; that he was paid for the entire month of October, and was entitled to compensation for 22 days in November. The defendant contends that this must be estimated at the rate of $480 per month, making $352, and that, deducting the admitted balance of $144 therefrom, the defendant should be credited with $208 upon this account. The plaintiff contends that it should be estimated upon the salary basis of $250, excluding the $200 for expenses and the $30 for upkeep of car, making $183.26, and that, deducting the admitted balance of $144 therefrom, the defendant was entitled to a credit of only $39.26 upon this account. It was conceded that the plaintiff had realized gross profits on the business which the defendant had secured during the period of his employment, October 1, 1918, to October 22, 1920, amounting to $16,833.69, which exceeded the stipulated amount of $12,000 by $4,833.69, upon which defendant claimed 40 per cent. commissions, $1,933.48.

It will thus be seen that the two principal points of controversy between the parties are: (1) Is the defendant entitled to compensation for the 22 days in November succeeding his discharge at the rate of $480 or $250 per month? (2) Is the defendant entitled to credit for 40 per cent. commissions upon the excess of $4,833.69 over the $12,000, the amount stipulated in the contract?

The Circuit Judge, in his direction of a verdict for the plaintiff, held that the defendant should be credited for 22

days at the salary rate of $250 per month, and not the salary rate plus the expenses, saying:

"He would have been entitled to his salary, the $250, but I don't think they would have had to have paid him any expense for the 30 days, because he would not have then been working for them."

He accordingly allowed $183.26 for the 22 days, which, diminished by the admitted balance of $144 due to the plaintiff on open account, gave defendant a credit of $39.26.

Upon the matter of the construction of the contract, the Circuit Judge held that a literal interpretation of it would be that, where the gross profits at any time, for any length of time in which the defendant was engaged and working for the plaintiff, amounted to $12,000, the defendant would be entitled to 40 per cent. of such excess, but that:

"If the parties themselves, after the contract was entered into, did not give it this literal construction, if by their actions and dealings with each other they showed that they understood it to mean $12,000 pre year, per annum, then the Court will enforce it according to the construction they have put on it."

He thereupon submitted to the jury the following issue:

"Have the parties in this case by their dealings with each other subsequent to the making of the contract in question, construed the commission clause to mean $12,000 per annum?"

The jury answered this issue in the affirmative. Thereupon the Circuit Judge directed a verdict in favor of the plaintiff for $246.20, which was thus arrived at:

| | |
|---|---:|
| Amount of note | $1,275.00 |
| Interest | 82.71 |
| Attorney's fee | 50.00 |
| Expenses of sale | 16.75 |
| Balance of open account | 144.00    $1,568.46 |

| | | |
|---|---|---|
| Salary 22 days | $ 183.26 | |
| Payments on car | 750.00 | |
| Sale of car | 389.00 | |
| Balance | 246.20 | $1,568.46 |

From the judgment entered upon the verdict so directed, the defendant has appealed, and by his exceptions contends: (1) That the Circuit Judge erred in submitting the special issue to the jury, instead of himself construing the written contract, which was plain and unambiguous; (2) That the Circuit Judge erred in not directing a verdict in favor of the defendant for the commissions to which he was entitled under the contract; (3) that the Circuit Judge erred in not allowing him credit for 22 days in November at $480 per month, instead of at $250. A decision of the questions thus raised is determinative of the other questions raised in the exceptions.

As to the first contention: No one can read the contract here without concluding that the intention of the parties was that, if the gross profits in any one year exceeded $12,000, the defendant should have 40 per cent. of such excess. The contention of the defendant, while borne out by a literal interpretation of the contract, leads to such an unusual, inequitable, and unreasonable conclusion that the Circuit Judge would have been justified in construing it into an annual adjustment of accounts, and hence the submission of a question of the contemporaneous construction of the contract by the parties to the jury was in the interest of the defendant and harmless. It is not necessary to detail the circumstances leading to the conviction that there was abundant evidence to sustain the jury's verdict. The course of the conduct during the two years of the defendant's employment shows conclusively that the defendant never dreamed of the position he now assumes. It passes comprehension that they ever intended that, after the $12,000 limit was reached, regardless of the time, every

dollar of profits should be divided 40 cents to the defendant and 60 to the plaintiff.

In 6 R. C. L., 841, it is said:

"Where the language of the contract is contradictory, obscure, or ambiguous, or where its meaning is doubtful, so that it is susceptible of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not enter into, the interpretation which makes a rational and probable agreement must be preferred."

See, also, 6 R. C. L. "Contract," §§ 225, 226, 230, 231, 239, 241. *Bishop on Contracts* §105; 13 C. J. *Leschen v. Mayflower Gold Mining & R. Co.*, 173 fed., 855; 97 C. C. A., 465; 35 L. R. A. (N. S.), 1. *Pressed Steel Co. v. R. Co.*, 121 Fed., 609; 57 C. C. A., 635. *Jacobs v. Spalding*, 71 Wis., 177; 36 N. W., 608. *Russell v. Allerton*, 108 N. Y., 288; 15 N. E., 391.

"The subject-matter of the contract and the purpose of its execution are material to the ascertainment of the intention of the parties and the meaning of the terms they use, and when these are ascertained they must prevail over the dry words of an agreement." 6 R. C. L., 837.

It is clear that the provision for commissions was inserted to stimulate the energies of the salesman, and not to provide a bonus for him at such indefinite period in the future as he might call for it.

"In construing a contract, the Court will ascertain the intention of the parties, and to that end will, as far as possible, ascertain the situation of the parties, as well as the purposes had in view at the time the contract was entered into." *Merrill-Ruckgaber Co. v. U. S.*, 49 Ct. Cl., 553, affirmed 241 U. S., 387; 36 Sup. Ct., 662; 60 L. Ed., 1058.

"Under the rule that a contract should receive a reasonable construction to execute the real intention of the parties, if a given act is not within such intention, it should not be

held to be so merely because it is within the letter of the written instrument." *Taber v. O'Neal,* 160 Fed., 596; 87 C. C. A. 498.

"Instruments should receive a sensible and reasonable construction and not such a construction as will lead to absurd consequences or unjust results." *Fairbanks v. Twin City Supply Co.,* 170 N. C., 315; 86 S. E., 1051.

It will be noted that there is no period fixed by the contract for the adjustment of the commissions account. If there had been, parol evidence would have been inadmissible to change it. But, where there is nothing in the contract affecting an essential element of it, we see no reason why parol evidence to supply it should not be allowed. Even, therefore, if the Circuit Judge should not have been authorized to construe the contract as the plaintiff contends, under this rule the evidence was admissible and the issue properly submitted to the jury.

As to the second contention: This contention is disposed of by the foregoing conclusion.

As to the third contention: The Circuit Judge properly ruled that the salary, and not the salary plus the expense account, should be the basis of estimating the credit to be allowed the defendant for the 22 days in November. We do not construe the letter of October 30, 1919, as making a new contract as to salary and expenses, but as fixing the time at which remittances should be made. No valid reason has been presented to justify the defendant in demanding expenses incurred in prosecuting the plaintiff's business, when his relations with the plaintiff had terminated and he could be put to no expenses on their account.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.