## McCORMICK v. PHILLIPS PETROLEUM CO.

No. 2205.

United States District Court
D. New Mexico.

March 17, 1953.

Reese, McCormick, Lusk & Paine, Carlsbad, N. M., for plaintiff.

Simms, Modrall, Simms & Sperling, Albuquerque, N. M., George L. Sneed, Bartlesville, Okl., for defendant.

HATCH, District Judge.

The plaintiff, McCormick, brought this action alleging in his complaint generally

that, before his dealings with defendant which are involved here, he was the owner of an oil and gas lease executed by appropriate officials of the federal government upon some 2300 acres of land in Lea County, New Mexico, the minerals under which were owned by the United States. The lease was in the usual form. Thereafter, in July 1947, the plaintiff, McCormick, and the defendant, Phillips Petroleum Company, entered into an option and agreement arrangement by which plaintiff granted defendant an option to make geological and geophysical exploration of said lands, the option being for a term of two years. The agreement also provided for what might be termed an operating agreement which could be exercised by defendant. Plaintiff agreed that upon exercise of the option by defendant, he would execute any further or other necessary documents, including an assignment of the oil and gas lease. The consideration paid by defendant was twenty-five cents an acre, which was approximately one-half of the sum paid by plaintiff to the government for the lease. By the terms of the option and agreement, plaintiff was to receive a two and one-half per cent overriding royalty. The agreement further gave authority for the unitization of the lands involved with other lands, if such agreement should be decided upon later. Following the execution of the option and agreement, a unitization arrangement was made and the lands covered by the lease involved were included in the unit. The original lease executed to McCormick was for a five-year term. As it was about to expire, a preference lease was obtained by defendant in its own name.

The defendant elected to exercise its option and to have an assignment to it from McCormick. The assignment was executed and delivered by McCormick on November 22, 1948. Later defendant, Phillips Petroleum Company, abandoned the project and surrendered the lease back to the federal government. No notice of its intention so to do was given to McCormick, and McCormick had no knowledge of the surrender until after it had become an accomplished fact.

McCormick claims he was entitled to have the lease returned to him and the failure of defendant to return or surrender the lease to plaintiff damaged him, McCormick, to the extent and value of the lease.

The defendant has answered, admitting many of the allegations of the complaint, but in substance it denies there was any obligation on its part to reassign the lease to plaintiff or to surrender the same to him and denies any liability to the plaintiff whatever.

Briefly and thus generally summarized the issues are formed by the pleadings.

Upon the filing of defendant's answer, plaintiff has moved the court for summary judgment on all points except the question of and the amount of damages, which, if the motion is sustained, will be determined later.

The defendant has also filed its motion for summary judgment.

Both motions have been argued and submitted to the court, and counsel for both parties agreed in open court that all facts are shown by the pleadings and the attached documents and the case is ripe for summary judgment in behalf of one party or the other.

In the light of the situation which developed during oral argument and statements of counsel that neither party had or desired to present any other evidence of any kind, except on the question of damages if that question is to be determined, the Court has consented to, and will dispose of the case upon the respective motions for summary judgment.

The entire case turns upon the interpretation and construction of the written agreements between plaintiff and defendant, copies of which are attached to the pleadings.

Plaintiff admits that under paragraph 10 of the agreement and option, defendant had the right at any time prior to the exercise of the option to terminate the agreement and all rights and obligations thereunder; but asserts upon such termination, defendant was required to mail a notice of such intention to terminate to the lessee, McCormick. After the exercise of the option

and subject to the provisions of any co-operative or unit plan, defendant had the right to surrender all its rights under the agreement and option as to all or any part of the lands covered thereby, but in such event plaintiff alleges the surrender was required to be made by mailing to lessee, McCormick, an instrument of "release and/or reassignment." Plaintiff argues that any surrender or release of defendant's rights acquired under the agreement-option contract had to be made to plaintiff, McCormick, and the release or surrender made to the United States Government was without right, was wrongful and was in violation in this regard of the provisions of paragraph 10.

On the other hand, defendant contends that the agreement and option became merged in the assignment which was later executed, in which assignment plaintiff, according to defendant's contention, granted the absolute right to defendant to surrender and release or forfeit the lease back to the federal government. The paragraph of the assignment upon which defendant relies is numbered 7 and is as follows:

"7. Assignee is hereby granted the right to release, forfeit and surrender that portion of the above mentioned lease herein assigned and, upon the happening of such event, shall thereupon be fully and completely relieved, released and discharged from all obligations to assignor hereunder and under said lease to the extent that it shall have been surrendered."

The contention of the defendant in this regard is resisted by plaintiff who claims that the entire agreement between the parties is evidenced and must be governed by the agreement and option, together with the assignment, and all must be construed together as one complete contract; that the controlling provisions of paragraph 10 of the agreement and option regarding surrender are to be considered along with paragraph 7 of the assignment and both be given effect if possible; that there is no conflict between paragraph 7 of the assignment and paragraph 10 of the agreement and option for, while paragraph 7 of the assignment does give the right of surrender to the assignee, the defendant, that paragraph is indefinite, silent and ambiguous as to whom the surrender or release should be made, while the provisions of paragraph 10, which also provide for surrender and release, specifically require such surrender or release to be made to plaintiff, McCormick, styled lessee in that agreement and option.

Paragraph 10 of the agreement-option contract upon which plaintiff relies is as follows:

"10. At any time prior to the exercise of its option herein granted, Phillips may terminate this agreement and all rights and obligations hereunder by mailing a notice of such termination to lessee at the address hereinabove stated.

"At any time after the exercise of the option herein granted, when not in default, and subject to the provisions of any cooperative or unit plan, Phillips shall have the right to surrender to lessee all of its rights hereunder as to all or any part of the land covered by this agreement. Such surrender may be made by mailing by registered mail to lessee, at the address hereinabove set forth, and appropriate instrument of release and/or reassignment, together with payment of One Dollar in consideration of such surrender. From and after the time of such surrender, Phillips shall be released from any and all further obligations and liability to lessee as to the land covered by such surrender. Unless lessee, at lessee's expense, shall furnish and secure the approval of all bonds required by the Secretary of the Interior in order to maintain said oil and gas lease in effect as to said lands within thirty days from the receipt of said surrender, then and in any such event Phillips may thereupon, as attorney in fact for lessee, surrender and release to the United States the lease or portion thereof which it has surrendered to lessee in order that Phillips may be thereby fully and completely relieved, released and discharged from its obligations on bonds

furnished or underwritten by it covering said lease or portion thereof so surrendered.

"In the event that at the time Phillips desires to make any surrender pursuant to the provisions of this section, the rights and interests of lessee hereunder or any part thereof are vested in any person or persons other than lessee, then the surrender shall be made to and consideration paid to such of the other persons so interested as have furnished Phillips with their respective post office addresses and evidence of their interest hereunder in the manner and form aforesaid in proportion to their interest hereunder."

The first question to be decided is: Did paragraph 7 of the assignment empower Phillips to surrender the lease to the United States without notice or opportunity given McCormick to protect the interest he retained, and which action by Phillips ignored McCormick and destroyed his two and one-half per cent overriding royalty?

Inasmuch as the assignment will now be considered alone without reference to the agreement-option instrument, it might be well to examine some of its provisions other than those contained in paragraph 7 to determine the real intent and purpose of that instrument.

In paragraph 6 immediately preceding paragraph 7, a purpose of the assignment is declared. In that paragraph it is said:

"6. Assignee is hereby granted the exclusive right, as between the parties hereto, to develop and operate the lands covered by this assignment, and each and every part thereof, to such extent and in such manner as assignee, in the exercise of its good faith and business judgment, shall determine to be proper, without incurring any liability whatsoever to assignor."

Here it is observed that the assignee is to develop and operate the property (which, of course, was for development and operation for oil and gas). So long as the property should be developed and operated "in the exercise of good faith and business judgment" no liability would be incurred to assignor. Conversely, this would mean that if assignee should not develop and operate the property in the "exercise of good faith and business judgment" liability to assignor would be incurred.

From the language contained in paragraph 6 it is clearly apparent this is not the type of an assignment in which the assignor divests himself of all interests and merely transfers all of his right, title and interest to the assignee, leaving all future matters to be determined between the original lessor and the assignee. Such transfers are often made but this is not of that kind. Paragraph 6 clearly reveals continuing contractual obligations between assignor and assignee. Such continuing obligations are further made clear and most definite when the two and one-half per cent overriding royalty retained by McCormick is considered. Without question, McCormick at all times valued, perhaps highly, this overriding royalty.

Having taken such pains to require that the leasehold estate should be developed and operated in the "exercise of good faith and business judgment" and that a failure to so develop and operate the property would make the assignee liable to the assignor, is it reasonable to suppose the parties intended by paragraph 7 to give assignee absolute power to destroy entirely assignor's interest in the venture, leaving him completely helpless and at the mercy of the assignee? It is not believed the words used in paragraph 7 bear any such connotation or interpretation.

Giving defendant's construction of paragraph 7 the weight for which it contends could lead to most absurd and unreasonable results. Suppose this particular lease had been surrounded by good, profitable producing wells; some of them being offset wells and so located the terms of the lease would require drilling on the lands included in it, would any court hold the assignee could sit idly by without drilling and thereby forfeit the lease without incurring liability to the assignor whose most valuable interest under such circumstances would be lost and destroyed? Yet the words of paragraph 7 construed alone and giving

them the broad, arbitrary and absolute meaning claimed by the defendant here could produce exactly that kind of an unjust, unfair and unreasonable result.

 Forfeiture is not involved here for there was no forfeiture. There was a surrender or release to the federal government of an oil and gas lease by the assignee in which the assignor retained a contractual vested interest. That interest was completely destroyed by the surrender. It makes no difference whether wells surrounded the lease or not, the interest of assignor, worthless or valuable, was extinguished without notice and without opportunity for assignor to protect himself in any way. Is the assignment to be construed as giving assignee any such arbitrary and unreasonable power as that, especially where development and operation is to be in the exercise of "good faith and business judgment?" It can hardly be reasoned that the parties intended the development and operation of the lease to be made and kept more safe and secure than the leasehold estate itself. Yet such, to me, absurd result will occur if defendant's contention be sustained. The entire instrument should be construed as a whole and the intention of the parties, as evidenced by the instrument in its entirety, must be ascertained and enforced. The intention ascertained should be the reasonable one, not an unreasonable, senseless interpretation which destroys rather than protects the rights and interests of the parties. Ordinary rules of construction always require the reasonable, sensible interpretation. As was said in Fairbanks Morse & Co. v. Twin City Supply Co., 170 N.C. 315, 86 S.E. 1051, and quoted in the later case of Chatfield-Woods Co. v. Harley, 124 S.C. 280, 117 S.E. 539, 541:

> "Instruments should receive a sensible and reasonable construction and not such a construction as will lead to absurd consequences or unjust results."

and in Stein v. Archibald, 151 Cal. 220, 90 P. 536, 537:

> "It is a well-settled principle applicable to the construction of contracts that where one construction would make the contract unreasonable, unfair, or unusual and extraordinary and another construction, equally consistent with the language, would make it reasonable, fair, and just, that the latter construction is the one which must be adopted."

The same principle was enunciated in Taber Lumber Co. v. O'Neal, 8 Cir., 160 F. 596, 597:

> "Under the rule that a contract should receive a reasonable construction to execute the real intention of the parties, if a given act is not within such intention, it should not be held to be so merely because it is within the letter of the written instrument."

To the same effect are Clappenback v. New York L. Ins. Co., 136 Wis. 626, 118 N. W. 245; Merrill-Ruckgaber Co. v. U. S., 49 Ct.Cl. 553, affirmed 241 U.S. 387, 36 S.Ct. 662, 60 L.Ed. 1058; Sanders v. General Motors Acceptance Corp., 180 S.C. 138, 185 S.E. 180; 13 C.J. Sec. 511, p. 540; 17 C.J.S., Contracts, § 319.

The foregoing quotations are merely to give the general rules which should be applied in the construction of contracts. Certainly an interpretation which is fair, reasonable and works no injury to either party should be preferred over a construction which could be unfair, unreasonable and which would injure at least one of the parties.

Paragraph 7 can be construed to carry out what appears to be the reasonable intention of the parties, be fair to both and without injury to either.

Surely the assignee desired the power to surrender, etc., only for the purpose of relieving itself from obligations incurred by taking the assignment. No large and reputable business organization, such as Phillips Petroleum Company, could have desired such power for the purpose of depriving McCormick of what he might well consider to be valuable property. Phillips could gain no benefit or advantage by so doing. Yet construing paragraph 7, as it now contends, would not only give such power but such power was actually exercised to the injury of McCormick and without benefit to itself when it surrendered the lease to the lessor, the federal government. I say,

"without benefit to itself," but it did of course relieve itself from the obligations of the lease; however, exactly the same result could have been achieved by a surrender to McCormick.

While no authorities have been cited or found sustaining the views I entertain under an exactly similar state of facts, nevertheless the opinion that good faith is required as between an assignee and the assignor, where an interest is retained by assignor, is sustained by ample and abundant authority. Assignee is not permitted to extinguish the rights of assignor by wrongful dealings with the lessor, such as surrendering the lease to lessor and then taking a new one directly to assignee, thus eliminating the interest of the assignor. In Wells v. Cline, 19 Ohio App. 165, where the lessee of an oil and gas lease assigned the lease under an agreement that the property should be developed for the benefit of both parties, the court said that when the assignee, entrusted as he was with the assignor's interest in the leasehold, secretly negotiated with the owners and obtained from them a leasehold in his own name, and to the exclusion of his assignor, he violated his trust, and the new lease became impressed with a trust in favor of the assignor. The Supreme Court of Oklahoma, in a similar case, that of Probst v. Hughes, 143 Okl. 11, 286 P. 875, 69 A.L.R. 929, said that the case came within the rules that whenever one person is placed in such a relation to another, by the act or consent of the latter, or by the act of a third person, or of the law, that he becomes interested for him, or interested with him, in any subject of property or business, he is in such a fiduciary relation with him that he is prohibited from acquiring rights in that subject antagonistic to the person with whose interest he has become associated. Other cases are: Stone v. Marshall Oil Co., 188 Pa. 602, 41 A. 748, 1119; Smith v. Munhall, 139 Pa. 253, 21 A. 735; Bates v. Georgia Fertilizer Co., 144 Tenn. 32, 229 S.W. 153; and Matthews v. Ramsey-Lloyd Oil Co., 121 Kan. 75, 245 P. 1064.

There are no charges of fraud, wrongful intent or ulterior motive in this case, and no one charges or believes that any such evil motives existed; but the defendant's contentions as to its absolute rights under paragraph 7 would make possible the formation and execution of just such a sinister plan or scheme. Common sense and plain, fair dealing between parties require an avoidance of any interpretation which could lead to unjust practices of this nature.

Construing the terms and conditions of the assignment and in the light of the manifest intentions of the parties, as appear from the instrument itself, together with the fiduciary relationship which exists to some extent between an assignor and the assignee, I am bound to conclude defendant did not have power to surrender the lease to the United States without at least first giving McCormick notice and opportunity to safeguard and protect the interest he at all times retained in the property.

Even though the conclusion I have reached be erroneous in the construction of the assignment alone, it is believed enough has been said to show that an ambiguity in the assignment does exist. The mere failure to designate to whom the surrender should be made may in itself render the assignment sufficiently ambiguous to require resort to other facts and circumstances, especially the agreement-option instrument, to determine just what was intended. Such failure, with other provisions of the assignment, such as the requirements of paragraph 6 as to good faith and the exercise of business judgment, and the interest retained by McCormick, all combined make a rather clear case of ambiguity.

Where one party has been needlessly injured, as was McCormick, a duty devolves upon the Court to gather, if possible, what the legal obligations of the parties are. If it is necessary to consider all the surrounding facts and circumstances, including previous written agreements (in this case the agreement-option document), to arrive at the true intent of the parties, a Court is not only permitted to consider such surrounding facts but it has the duty so to do. No citation of authority or extended discussion of such a well established rule of construction is required. The authorities admit of but little doubt on this point. It is a mere matter of construction. The as-

signment and the agreement-option are not in conflict. Under paragraph 10 of the option-agreement, the intention of the parties to have the lease returned to McCormick in the event it was surrendered or abandoned by Phillips appears quite evident. It so states in plain language. I cannot give the agreement-option instrument the narrow construction requested by defendant when it argues the clause requiring surrender to McCormick only relates to the operating provision of the agreement. I do not believe the parties had any such construction in mind when the instrument was executed. The word, "reassignment" as it appears could hardly refer to the operating agreement. It clearly indicates to my mind a "reassignment" of the lease which it was contemplated would be assigned. I much prefer to adopt the more reasonable and fairer interpretation to the effect that both parties were entering onto what they hoped would be a pleasant and profitable venture in which each would own and retain substantial interests. In the event the project should be abandoned, each party would be protected against injury and would be returned to his or its original position as nearly as possible. Such seems to me to be the reasonable and just interpretation. Moreover, I cannot help but be convinced that was just what both parties intended, and that intention should be carried out by order of the Court if necessary.

That the lease was surrendered by Phillips contrary to the intention I have gathered from the instruments does not convey any different intention to me. Neither does it display any fraud or ulterior purpose. It was rather one of those errors which sometimes occur in the best and most efficient organizations without intentional wrong on the part of anyone.

As it had the right to do under the agreement, Phillips had acquired a new preference lease on the lands covered in McCormick's original lease. This did not change the relative rights of the parties, but having taken the new lease in its own name when the time came to abandon the project Phillips merely looked at the new lease executed to it and surrendered it without thought of McCormick's interest. While such error may, and I believe it does, relieve defendant from wrongful purpose, it does not relieve it from legal obligation or liability to McCormick who may have sustained a substantial loss. Even though innocent of purposeful wrong-doing, defendant should reimburse plaintiff for the actual damage resulting from the violation of the agreement to reassign the lease.

Plaintiff's motion for summary judgment will be sustained and defendant's similar motion overruled. Final judgment will not be entered until the question of damages is determined.