CLAPPENBACK, Appellant, vs. NEW YORK LIFE INSURANCE COMPANY, Respondent.

*October 21—November 10, 1908.*

*Insurance: Construction of contract: Nonpayment of premiums: Election by insured of paid-up insurance: When takes effect.*

1. A life insurance policy for $1,000, providing in effect for the application of surplus or reserve to payment for continuance of insurance after default in payment of premiums, stated that, upon written request therefor within six months from the date to which premiums were paid, the policy would be indorsed for the amount of paid-up insurance shown by a table, and that if no such request should be made the insurance would automatically continue from said date for the full amount of the policy for the term specified in the table. Default occurred October 20, 1906, after payment of several premiums. The amount of paid-up insurance specified in the table was $164, and the time for which the policy would be continued for $1,000 was six years and four months. On January 2, 1907, after correspondence with the assured, the company stamped upon the policy: "The premium due October 20, 1906, not having been paid, this policy is in-

dorsed for the reduced amount of paid-up insurance of $164 subject to the conditions of the policy . . . pursuant to the insurance law of the state of New York." On January 4, 1907, the insured died. The New York law and our statute (sec. 1955o, Stats. 1898) forbade any discrimination between insurants of the same class. *Held*, that by the terms of the policy the insurance for $1,000 continued for the full six months after the default, and an election of paid-up insurance, made within the six months, would become effective only at the end of that period; and that the indorsement should be construed accordingly. The company was therefore liable for the full amount of the policy.

MARSHALL, J., dissents from such construction of the policy, but concurs in the judgment on the ground that, as a result of the correspondence between assured and the company, any election to take paid-up insurance, other than one to take effect at the end of the six months, had been withdrawn by consent of the company.

2. Even an apparently unambiguous contract may be rendered ambiguous and open to construction if its words, taken literally, lead to absurdity or illegality when applied to the facts.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Reversed.*

Plaintiff's husband, Henry Clappenback, held a straight $1,000 life insurance policy with the defendant company, payable upon his death to the plaintiff, containing a clause for payment of tontine accumulation of profits at end of twenty years. He had paid premiums thereon for six years, up to October 20, 1906, but defaulted in payment of premium due at that date. The policy provided:

"This policy is automatically nonforfeitable from date of issue, as follows: If any premium is not duly paid, and if there is no indebtedness to the company, this policy will be indorsed for the amount of paid-up insurance specified in the table on the second page hereof, on written request therefor within six months from the date to which premiums were duly paid. If no such request is made, the insurance will automatically continue from said date for $1,000 for the term specified in said table and no longer."

In the schedule the amount of paid-up insurance was stated at $164, and the time that the policy would be continued for its face was stated at six years and four months, as a result of payment of premiums for six years.

Immediately after the premium of 1906 was due, to wit, on or about October 21st, the plaintiff, on behalf of her husband, went to the local office of the company and notified its agent, and told him that they wanted it indorsed for paid-up insurance. He told her that it was good for thirty days and she had better wait for that period, and on the 20th of November he again told her that it was good for one day more. On the 21st of November she delivered the policy to him for the purpose stated, and it was sent to the office of issue in Chicago with an application for such indorsement. Several letters passed between the parties, in which the company offered generally to advise, but gave no information, until in December they suggested that assured might as well have waited until April 20th and had benefit of the whole $1,000 insurance meanwhile. Whereupon the plaintiff replied by letter on December 22, 1906, declaring misunderstanding and expressing desire to preserve all rights. Defendant, however, on January 2, 1907, stamped upon the face of the policy: "This policy is indorsed for paid-up insurance under the conditions of the statement on the next page," and on the next page indorsed, by rubber stamp form, "The premium due October 20, 1906, not having been paid, this policy is indorsed for the reduced amount of paid-up insurance of one hundred and sixty-four dollars ($164) subject to the conditions of this policy, but without further payment of premiums, and without loans, participation in surplus and premium return, pursuant to the insurance law of the state of New York," and mailed it to the insured. On January 4th, before his receipt of the indorsed policy, the insured died of an acute illness.

The plaintiff, after making proofs of loss, sued for $1,000.

The defendant tendered $164.    The action was tried to the
court without a jury, and the court found as a fact that Clap-
penbaçk made his election to choose a paid-up policy and
thereby waived all other provisions, and that the correspond-
ence did not constitute a countermand of that election, and
accordingly rendered judgment for plaintiff for the less
amount, and in favor of the defendant for the costs incurred
subsequent to the tender, from which judgment plaintiff ap-
peals.

*H. W. Dietrich,* for the appellant.

For the respondent there was a brief signed by *Grace &
Hudnall,* attorneys, and *James H. McIntosh* and *John Kirk-
land Clark,* of counsel, and oral argument by *G. B. Hudnall.*

DODGE, J.    The first and most important question is that
of the true construction of the so-called automatic nonfor-
feiture clause quoted in the statement of facts.    This policy
provided for payment of premiums considerably in excess of
the cost of carrying the insurance, whether as fixed by the
laws of New York or as ascertained by defendant's actuaries.
It therefore contemplated that at all times after the first pay-
ment the insured would have in the defendant's hands a cer-
tain surplus or reserve fund belonging to him, which, but for
agreement to the contrary, he should equitably have a right to
withdraw upon discontinuance of the insurance.    This pol-
icy provided against such withdrawal and, in effect, that de-
fendant should keep this fund, and in consideration thereof
that it would continue the insurance of $1,000 for six years
and four months.    The policy, however, gave the assured an
election to commute such $1,000 insurance for a limited time
into paid-up life insurance of $164, on written request made
within six months after default in premiums.    The amount ·
was to be the same whether he gave that notice at the begin-
ning or the end of the six-months period.    That is, the as-
sured at least could, if he chose, perpetuate the $1,000 liabil-

ity up to the end of the six-months period; and it is therefore certain that the company's actuaries computed and deducted the cost of $1,000 for the whole of that period in order to ascertain the amount of the surplus which it would apply to paid-up insurance. Of course the cost of $1,000 insurance for six months is more than for one month, and for any given term it is greater than the cost of $164 insurance for the same term. It is therefore obvious that on January 2d less of Clappenback's surplus had been exhausted than would have been on April 20th, and upon a fair commutation the balance would have purchased a larger amount of paid-up insurance. The statutes of New York, when this policy was written, forbade all discrimination between policy-holders of the same class, and required that paid-up insurance be accorded to the full amount that the existing reserve would purchase at the established rates. Ch. 85, Laws of 1898. Whether such foreign statute was properly before the court or not, the general policy thereby expressed is part of the law of this state. Sec. 1955o, Stats. (1898). This contract, as construed by defendant and by the trial court, would be in defiance of the policy of these statutes. It would give to one who declared his election before the six months had expired less insurance than to another, similarly situated, who withheld such declaration till the end of that period. It would give to the former less insurance than his reserves would purchase at established rates, if $164 was the correct amount purchasable by the reserves at the end of six months. Even an apparently unambiguous contract may be rendered ambiguous and open to construction if its words, taken literally, lead to absurdity or illegality when applied to the facts. *Rice v. Ashland Co.* 108 Wis. 189, 193, 84 N. W. 189; *Rossmiller v. State,* 114 Wis. 169, 178, 89 N. W. 839; *Loper v. Sheldon's Estate,* 120 Wis. 26, 97 N. W. 524; *Pape v. Carlton,* 130 Wis. 123, 109 N. W. 968; *State ex rel. Williams v. Samuelson,* 131 Wis. 499, 505, 111 N. W. 712.

Clappenback v. New York Life Ins. Co. 136 Wis. 626.

But we do not think this contract clear and unambiguous. It nowhere expressly declares when the substitution of paid-up for term insurance shall take place; merely that the term insurance shall persist unless the written request for full-paid insurance be made within six months. It also, by clearest implication, provides that the company shall take out of the reserve and retain full payment for six months $1,000 insurance immediately on happening of the default. We think the implication is plain that the insurance liability shall continue during that whole six-months period, regardless of when assured shall make up his mind that for the future he prefers the full-paid insurance for the smaller sum. The policy contemplates the act of election as one likely to take place at any time within the six months; but to hold that the parties intended that by the act of election the absolute liability for $1,000 insurance which assured had paid for should be reduced to a liability no more absolute and no different in character during the rest of the six months of only $164 involves the absurdity that both parties assumed the likelihood that the assured would for no consideration whatever surrender $836 of the absolute $1,000 of liability. Such an act with reference to a promissory note would be absolutely void for want of consideration. It is unbelievable in case of a contract like this. We think no purpose could have honestly or legally been intended expression by the words used, save that both parties were bound without option to continuance of the full insurance for six months, and that the option of assured was to choose between the two equivalents: continuance of $1,000 insurance after that time for a specified period or $164 for his life; that, in other words, the option could not apply to the period during which his rights were fixed independent of any choice or election by him.

This view is entirely consistent with, and, we think, confirmed by, the indorsement in fact made on the policy as

quoted in the statement of facts.    Had the intention been to declare $164 of paid-up insurance from that date in present substitution for the pre-existing contract, it was easy to say just that in few words.    Instead of that it is declared that it is "indorsed for" paid-up insurance of $164, "subject to the conditions of this policy" and "pursuant to the insurance law of New York."    It also recites the date of default in premium, which is of no relevancy to a new agreement for present change to a paid-up policy.    That date, however, is relevant and significant if "indorsed for paid-up insurance" means shall become effective for paid-up insurance, subject to the conditions of this policy and pursuant to the insurance laws of New York, to wit, at the end of the six-months period from such date of default, for which period the company has taken payment for maintaining $1,000 insurance and at which time the $164 will be the amount of full-paid insurance purchasable at established rates by the sum of the amount of reserves or surplus of premiums paid by assured. That is what the indorsement ought to mean, and, since it is fairly susceptible of such construction, we think that is what it does mean.

We conclude that at the time of the death of Henry C. Clappenback, January 3, 1906, the policy was in full force as insurance for $1,000, and it is therefore unnecessary to consider whether he had effectively withdrawn his election to substitute paid-up insurance before the defendant had acted upon it.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in plaintiff's favor for $1,000, with interest and costs.

MARSHALL, J. (*concurring*).    I concur in the result reached by the court in this case, but dissent from the grounds upon which such result is based and the reasoning in support thereof.    To my mind the provision of the insurance con-

tract discussed in the court's opinion is unambiguous. The language "If any premium is not duly paid, . . . this policy will be indorsed for the amount of paid-up insurance specified," etc., "on written request therefor within six months from the date to which premiums were duly paid. If no such request is made, the insurance will automatically continue from said date for $1,000 for the term specified," etc., is about as plain, it seems, as English words can well be.

The assured was given the option of $1,000 of insurance for a limited time or the smaller amount absolutely, the former to be regarded as his choice in the absence of notification to the contrary within six months. Facing that plain language, to hold that the assured was given his option to have absolute insurance for $1,000 for the limited time with the option to substitute therefor the smaller amount of absolute insurance at the end of six months by notice to the company within such time, seems to be a plain judicial change of the contract the parties made for themselves rather than a construction thereof.

The reference to the New York law prohibiting discriminations and its application in support of the court's decision, the theory being that any other construction of the contract would be a violation of such law, seems illogical, since, so long as every policy-holder of the class is given the same option, as is manifestly the case, there cannot be, in the very nature of things, any discrimination in holding the parties to the plain terms of the writing.

Notwithstanding the foregoing it was doubtless competent for the company to relieve the assured from any mistake he may have made in making his election to take absolute insurance and surrendering his privilege as to the greater insurance for a limited time, long before the expiration of the period within which he was required to act in the matter expired. The company acted commendably in writing assured, calling attention to his apparent mistake and expressing the

hope that he would correct it before it was too late.   That plainly and legitimately held out an offer to the assured of a reasonable time to make the correction.   The only correction that could have been in the minds of the parties was a suspension of the election already made to take absolute insurance till about the time limited for action in the matter.   The assured seasonably replied 'to the company's communication, notifying it that he desired all the advantages which the contract gave him.   That cannot reasonably be construed otherwise than a correction of the mistake in making an early election; a withdrawal or modification thereof to the end that it might take effect only at the termination of the six months; the doing of the very thing which the company suggested to the assured he ought to do in his own interest while there was yet time given him by the favor of the company for that purpose.   Such being the case, the company acted in fraud of the rights of the assured and the beneficiary in treating the election as not withdrawn.   There was in fact no election at the time the assured died except one to take effect at the end of the six months.   Therefore a recovery should have been allowed in accordance with the conclusion which the court has reached.