# PACIFIC STATES LIFE INS. CO. v. BRYCE.
## No. 882.

Circuit Court of Appeals, Tenth Circuit.
Nov. 23, 1933.

Henry G. Coors and D. A. MacPherson, Jr., both of Albuquerque, N. M., for appellant.

Merritt W. Oldaker, of Albuquerque, N. M., for appellee.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

Recovery of the principal sum was had below upon a policy insuring the life of Charles W. Bryce, who died on March 28, 1932. The plaintiff, his widow and beneficiary, in her complaint averred that after paying premiums thereon for six years, the insured defaulted the premium payable on February 3, 1932; that he did not elect to avail himself of any of the options afforded by the policy for the application of the reserve value, and that the policy was therefore automatically extended beyond the date of his death. The defendant, on the contrary, alleged that the insured elected to take the cash surrender value of the policy; that he and the beneficiary surrendered the policy before the death of the insured; that thereby the insured became entitled to $435.00, the full reserve value of the policy; that payment of such sum was delayed from February 24 to April 8 on account of the unprecedented number of such surrenders, but that tender thereof was made and refused on the latter date. The defendant concedes its liability to the estate of the insured for the cash surrender value, but denies any liability to the beneficiary. To which answer plaintiff replied admitting the particular facts pleaded by way of answer, but averring that the surrender value not being paid promptly nor within the lifetime of the insured, the offer to surrender the policy was a nullity.

The pleadings tender the simple issue as to whether the policy was effectively surrendered prior to the death of the insured. The facts are stipulated. A net reserve of $435.00 had accumulated on this policy by February 3, 1932, the premium paying date. The policy accorded the insured three elections as to this reserve: it could (1) be withdrawn in cash, or (2) used to purchase a paid-up policy for a reduced amount, or (3) used to purchase extended insurance for the face of the policy for a limited term. In the absence of such election, feature (3) became automatic. The cash value provision reads:

"After three full years' premiums have been paid, the insured, with the consent of the assignee or irrevocably named beneficiary (if any), may, if elected within one month after expiration of grace period, but not later, and upon proper surrender of this contract, receive the then cash value, less any indebtedness."

The policy gave the insured the right to change the beneficiary, and further provided that:

"All the rights and benefits accruing hereunder to the insured are vested in said insured without consent of any beneficiary unless otherwise provided by the insured or expressly prohibited by statute."

On January 18 the insured mailed the policy to the company with the statement that he would like to cash it in on February 3, the next premium date. On January 29 the company called his attention to the fact that if the cash were withdrawn, his insurance would be gone, and suggested that he borrow on the policy instead. On February 3 the insured expressed his appreciation of the interest shown by the company, but adhered to his decision to cash in the policy. The company then mailed him, on February 9, a form of agreement which recites that the "sole owners of Policy No.—8549 * * * have this day surrendered said Policy in consideration of its cash value, which at this time amounts to Five Hundred Eighty-five and no/100 Dollars and said parties hereby acknowledge receipt of ($585.00) in consideration of which they agree to release said Pacific States Life Insurance Company from all further liabilities under Policy No.—8549."

This agreement was executed by the insured and also the plaintiff, although she was neither an assignee nor an irrevocably named beneficiary. On February 24, the company acknowledged receipt of the surrender agreement and advised that by reason of the congestion in its Loan Department, some delay would ensue in remitting the cash, but that check would go forward as soon as the application was reached in its turn.

The insured took no further steps in the matter. After his death on March 28, the company mailed a check for the surrender value on April 8, which the parties stipulate was "as soon as cash was available therefor and in its proper turn," and the policy was endorsed "Cash surrender 4–8–32." Demand was made for the payment of the face of the policy, refused, and this suit followed.

Plaintiff's theory, adopted by the trial court, is that the execution of the surrender agreement was an offer by the insured to the

company to surrender the policy for a cash payment of $435.00; that such offer lapsed and the surrender agreement voided because the surrender value was not paid within a reasonable time or before the death of the insured.

With this construction of the policy contract we are not in accord. It puts the cart before the horse. The policy vested in the insured certain definite rights, among them the right to be paid the reserve on his policy in cash upon a surrender of his policy, if demanded within a specified time. The insured did demand the surrender value within the prescribed time, and surrendered his policy. When he did so—a month before his death—he became absolutely entitled to payment in cash of $435.00. Upon his death his estate, and not his beneficiary, became entitled to that sum. The offer is contained in the policy contract, and is from the company to the insured; the option is in the insured and not the company, and his acceptance completes the contract; the company has no right to accept or reject; its obligation to pay is absolute. Under plaintiff's theory, an insured may only offer to surrender his policy for its cash value; the company may then accept or reject the offer, and if it fails to pay as agreed, the offer lapses. Such a construction would wipe out the right of an insured to the cash surrender value of his policy, because the company could defeat his right by rejecting his offer, or by failing to pay. To construe an exercise of an option as an offer to the company, subject to rejection or lapse, would be to warp the plain terms of the contract and to deny the insured a right he has paid for. If Bryce, on March 15, had sued the company for $435.00, could the company have defended on the ground that it had not accepted his offer to take the cash surrender value? Clearly not; yet plaintiff's contention comes down to that.

■ The cases, as far as we are advised, are at one in holding that the rights of the parties are fixed when an option given by a policy is exercised by the insured. In Lipman v. Equitable Life Assur. Society (C. C. A. 4) 58 F.(2d) 15, 18, the insured was killed the day the application for the surrender value was received by the company and before the check therefor was mailed. The Fourth Circuit Court of Appeals held that liability was limited to the surrender value, Judge Parker saying:

"Since the insured had the option to surrender her policy and take the cash surrender value on October 10th, there can be no question but that the rights of the parties became fixed and insured became entitled to the cash surrender value, and nothing more, when she exercised the option. It was not necessary that defendant do anything. There was a meeting of the minds of the parties when insured accepted the continuing offer of the company evidenced by the option."

Other cases to the same effect are Pequot Mfg. Corp. v. Equitable Life Assurance Society, 253 N. Y. 116, 170 N. E. 514; State Life Ins. Co. v. Finney, 216 Ala. 562, 114 So. 132; Northwestern Mutual Life Ins. Co. v. Joseph, 103 S. W. 317, 31 Ky. Law Rep. 714, 12 L. R. A. (N. S.) 439; McCormick v. Travelers' Ins. Co., 215 Mo. App. 258, 264 S. W. 916; Cooper v. West, 173 Ky. 289, 190 S. W. 1085. Plaintiff distinguishes these cases upon the ground that there was an unreasonable delay of some forty days in the case at bar, not present in the cited cases. The delay of the company, assuming it to be unreasonable, was a breach of its contract to pay the surrender value; it does not follow from the fact that a contract is breached, that there never was a contract. Plaintiff relies strongly on Southwestern Life Ins. Co. v. Hillson, 185 Ark. 88, 45 S.W.(2d) 1068, which, as we see it, is not at all in point. There the company and the beneficiary agreed to settle a disputed death loss for 25 per cent. of the face of the policy, but the company did not pay. In a suit on the policy, the company undertook to set up the unexecuted accord as a release, and of course was unsuccessful.

■ Whether the delay in payment was a sufficiently substantial breach of its agreement promptly to pay as would have entitled the insured to rescind the contract of surrender is not before us. The case made by the pleadings is whether the policy was surrendered, and not whether grounds exist to set aside the surrender agreement. Nor is there any suggestion that the insured availed himself of his right to rescind, if one he had. On the contrary, by his silence he acquiesced in the delay occasioned by the deluge of applications for surrender values. Nor are we presented with the question of whether a rescission could be had after the death of the insured had radically changed the situation as it existed when the contract was made. If there ever was a right to rescind the contract by which the insured became entitled to the surrender value, it was not one which could be exercised by the beneficiary of the surrendered policy. Upon the death of the insured, there passed to his estate a claim of

$435.00 against the insurance company. His personal representative, his heirs, his creditors, cannot be. deprived of this chose in action by one who was the beneficiary in a surrendered life insurance policy. If the administrator of his estate sued for the $435.00, the company could not defend upon the ground that the beneficiary elected that it should not pay it. Whatever may be the true rule as to the right of a beneficiary to exercise an option afforded by an insurance contract which the insured had not exercised in his lifetime,[1] certainly one who once was a beneficiary in a surrendered insurance policy has no right to rescind a contract by which the insured converted an agreement to pay a larger sum upon death into an agreement to pay a smaller sum now.

The judgment is reversed with directions to enter judgment for the defendant. Penrose v. Howbert (C. C. A. 10) 38 F.(2d) 577.

Reversed.

---

[1] In several early cases the rule is stated that a beneficiary may exercise options contained in life insurance policies after death of the insured, and Judge Cooley states that such an option may be exercised by the beneficiary or the legal representative of the insured. Cooley's Briefs on Insurance (2d Ed.) p. 3816. With one exception, all of the cases cited in support of the text are intermediate appellate courts. Of these cases, Veal v. Security Mutual Life Ins. Co., 6 Ga. App. 721, 65 S. E. 714, held that since the insurance remained in force during the period granted for the election, death in that period annulled all element of choice and the company was liable for the face of the policy. In McEachern v. New York Life Insurance Co., 15 Ga. App. 222, 82 S. E. 820, it was held that the right of election was a property right passing to the personal representative of the insured. Of the decisions of state Supreme Courts, Clappenback v. New York Life Ins. Co., 136 Wis. 626, 118 N. W. 245, holds that where the policy provides that an election may be made within six months from default, the insurance remaining in force meanwhile, an option exercised within the six months was effective at the end of the period. The decision rests upon a statute forbidding discrimination and requiring that the full reserve be accounted for. To the same effect is Hampe v. Metropolitan Life Ins. Co. (Mo. App.) 21 S.W.(2d) 926. In New York Life Insurance Co. v. Noble, 34 Okl. 103, 124 P. 612, 45 L. R. A. (N. S.) 391, Nielsen v. Provident Society, 139 Cal. 332, 73 P. 168, 96 Am. St. Rep. 146, and Wheeler v. Conn. Mut. Life Ins. Co., 82 N. Y. 543, 37 Am. Rep. 594, a statute provided that "on demand made" the reserve shall be applied as stated in the policy. The policy making no provision therefor, it was held that the demand might be made by the beneficiary after the insured's death.

On the other hand, it was held in Sugg v. Equit. Life Assur. Soc., 116 Tenn. 658, 94 S. W. 936, that if the option were not exercised before the death of the insured, the automatic option attached. Balthaser v. Ill. Life Ins. Co., 110 S. W. 258, 33 Ky. Law Rep. 283, and Dougherty v. Equitable Life Assur. Soc., 144 Misc. 363, 259 N. Y. S. 146, adhere to the same doctrine. The Supreme Court of Pennsylvania in McDonald v. Columbian Nat. Life Ins. Co., 253 Pa. 239, 97 A. 1086, 1087, L. R. A. 1916F, 1244, 1246, held that "The option was personal to him, and cannot be exercised after the rights and liabilities of the parties have been fixed by his death. Unless the insured elects to take extended insurance the right thereto is lost." In Bartholomew v. Security Mut. Life Ins. Co., 140 App. Div. 88, 124 N. Y. S. 917, affirmed 204 N. Y. 649, 97 N. E. 869, it was pointed out that no real element of choice or election was involved in choosing between a lesser and a larger sum; that to give the beneficiary an "election" between paid-up and extended insurance after the insured's death was simply to hold that the company was liable for the face of the policy; that upon the death of the insured the rights of the parties are fixed.

Even where a rational election by the insured has been prevented by insanity, the decisions are in conflict as to the right of his beneficiary to exercise the option. The cases are gathered in Walters v. Mutual Life Ins. Co. (C. C. A. 4) 64 F.(2d) 178, in which the court held that if the option was not in fact exercised, either by the insured or his guardian, the automatic provision was operative. To the contrary, see Marti v. Midwest Life Ins. Co., 108 Neb. 845, 189 N. W. 383, and annotation 29 A. L. R. 1511.

Much may be said for the rule that the options contained in the policy are terminated by death, and that the rights of the parties should be measured by the contract as it then existed; if the insured has not exercised an option given him, it may fairly be assumed he wished the automatic feature to apply. The period granted him in which to exercise such option, his insurance meanwhile remaining in force, is a safeguard against sudden death depriving him of an opportunity to elect. Such a rule would avoid a controversy where the personal representative makes one election and the beneficiary another. For the reasons stated in the opinion, we do not feel that we are presently called upon to go further than to note that the weight of authority is opposed to the view that a beneficiary may exercise a policy option after the death of the insured.