14273

SANDERS v. GENERAL MOTORS ACCEPTANCE CORP.

(185 S. E., 180)

June, 1935.

*Mr. Adam H. Moss,* for appellant.

*Messrs. Blatt & Fales,* for respondent,

April 7, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This action was brought by the plaintiff against the defendant for damages, actual and punitive, for the unlawful and wanton seizure and conversion of an automobile, and of certain personalty which was in the automobile at the time of the seizure by the defendant. The action sounds in tort, and is based upon the alleged willful invasion of the plaintiff's property rights.

On February 26, 1934, the plaintiff, who is a citizen of Barnwell County, traded his automobile to the Grubbs Chevrolet Company, of Barnwell, for a new Chevrolet coach automobile, and executed a conditional sales contract or chattel mortgage covering the new car and securing the credit portion of the purchase price, payable in twelve monthly installments. On the same day, the chattel mortgage was assigned by the Grubbs Chevrolet Company to the General Motors Acceptance Corporation. The plaintiff paid one installment on his contract, and by reason of some controversy between him and the defendant about the car, declined to make further payments, and refused to surrender possession of the car.

The defendant answered the complaint, setting up that it peaceably took possession of the car under its past-due chattel mortgage; that the articles of personal property stored in the car were temporarily held for plaintiff by the defendant, and all of said articles were returned to the plaintiff at the earliest possible time.

Trial of the case resulted in a verdict in favor of the plaintiff for $231.00 actual damages, and $1,065.00 punitive damages.

The appeal here alleges error in the trial Judge's rulings with reference to the construction of the contract, and especially that provision of the contract which reads: "Seller may take possession of any other property in the above-

described motor vehicle at time of re-possession, and hold same temporarily for purchaser, without liability on the part of the seller"; also alleges error in refusing defendant's motion for a directed verdict as to punitive damages; in refusing defendant's motion for a new trial as to actual and punitive damages; and also alleges error in his instructions to the jury.

In order to obtain an understanding of the issues involved in the appeal, it is necessary to give a statement of the testimony.

The plaintiff at the time of the seizure of the car and the other personal property was one of the magistrates in Barnwell County. He was also engaged in farming, and in addition to this, was employed by Clemson College in obtaining and transmitting various samples of soil. On the day the car was seized the plaintiff had driven to the Town of Barnwell, and had parked his car on the public square in front of a drug store. According to his testimony, and that of a companion, before leaving the car, he raised all the glasses in the doors, locked the motor, locked the car doors, and then entered a nearby restaurant for dinner. He testified that he left in the car numerous samples of soil in containers, a hole digger, a sheepskin overcoat, a map of the county, a .38 pistol, a pair of handcuffs, all the records of his week's work, a farm account book, a pasteboard case containing warrants, a small locked box containing his pocketbook and his money, and other things; that in the locked box were two $50.00 bills in a pocketbook. The locked box, 8 × 10 inches in size, was made of tin, and is described as being similar to a fish box. This box was left on the front seat.

When the plaintiff returned from the restaurant, having finished his dinner, the car was nowhere to be seen. Thinking that it had been stolen, he went to the sheriff's office to report the loss, and then called up the State Highway Department in Columbia, and reported that his car had been stolen. Later, he was told by the deputy sheriff of Barnwell County

that the car had been seized by an agent of the defendant. Five days later, the defendant delivered to the plaintiff all of the articles mentioned above, except a part of the Clemson College records, the farm account book, and the locked box containing his pocketbook and his money. The property which was returned was carried to his home and delivered to his wife.

The car was seized by an agent of the defendant under the following circumstances:

On the day in question, the defendant, through its office in Atlanta, furnished its field representative with a key to the plaintiff's car, and instructed him to go to Barnwell and seize the plaintiff's automobile under its chattel mortgage, which was past due. Arriving in Barnwell, the agent went to the garage of the Grubbs Chevrolet Company. Jeff Black, a local constable, who was a witness for the defendant, testified that he was with the agent of the defendant at the Grubbs Chevrolet Company, and saw the plaintiff drive the car into this garage, and then saw him drive to the drug store and park and leave it. No demand was made upon the plaintiff while he was in the garage for the possession of the car, nor did the agent have any conversation there with the plaintiff with reference to the matter. This witness is a brother-in-law of Mr. Grubbs, and was employed, from time to time, by the defendant in accompanying its agents while out collecting. He witnessed the actual seizure and repossession of the car by the agent.

The defendant's agent testified that he had specific orders to seize and repossess the car without legal process; that he had the chattel mortgage in his possession, and was instructed to take the car under the mortgage. He stated that the doors of the car were not locked, and that in starting the motor he used the key furnished him by his superiors; that he made no effort to locate the plaintiff, because his superiors had instructed him to take the car any way he could; that when he entered the automobile he "got a quick glance" at

the car and the various things in the back of the car, and that he then, with the car and its contents, "made for the State of Georgia as quick as he could"; that he reached Atlanta without being apprehended for speeding; that in his headlong departure from Barnwell he did not stop at the sheriff's office for the purpose of checking the personal property found in the car, but that he drove straight to Atlanta, as stated. This witness admitted that he found the following items of personal property in the car when they were checked in Atlanta: A pair of handcuffs, a package of forms, one .38 caliber pistol, five cartridges, about 50 cartons of dirt, a hole digger, one county map, and a warrant or bill of sale. He denied that anybody else had had an opportunity to get to the personal property before he checked it, because he did not leave the car out of his sight until he reached Atlanta. He stated that he did not look for a money box in the car, nor did he see any money box, but that he turned over everything that was in the car to his superiors. He knew that the defendant's mortgage did not cover any of the personal items referred to.

The following testimony taken verbatim from the record discloses the nature of the defendant's instructions to this witness, and his mode of action in executing them:

"Q. You were sent here to take that car under the conditional sales contract put in evidence? A. Yes, sir.

"Q. You took it where you found it? A. Yes, sir.

"Q. Without saying anything to anybody? A. Yes, sir.

"Q. Nobody was present to interfere with you? A. No, sir.

"Q. How did you take it? A. I had no trouble at all, but I had my key in there and I drove it away."

### Re-cross Examination

"Q. You followed the instructions of your superior officers of the General Motors Acceptance Corporation? A. Yes, sir.

"Q. In taking the car as you did take it? A. Yes, sir.

"Q. And without saying anything to Mr. Sanders? A. Yes, sir."

Several questions are raised by this appeal. We shall first discuss and dispose of what we deem to be the major issue: Did the trial Judge place the proper and reasonable construction on the provision of the conditional sales contract or chattel mortgage, reading as follows: "Seller may take possession of any other property in the above-described motor vehicle at time of repossession, and hold same temporarily for purchaser without liability on the part of the seller"?

The decision of this question will be largely determinative of the appeal.

The trial Judge instructed the jury that the defendant had a right to seize and repossess the car, because legal title had passed to it by non-payment of the debt, which was long past due, but that the defendant had no right to take the plaintiff's personal property found therein. In construing the provision of the contract just given, he charged the jury as follows:

"As I construe that clause it does not cover property that you can go and look in it (the car) and see it there. As far as I know, the Supreme Court of South Carolina has never construed this legal question, and it comes now as a brand new proposition, but I cannot see that the parties meant a literal construction of that provision, but my view of it is, and I so charge you, that it covered property which is not visible just by looking into the car, but it does not cover a case where the property is there and they can see it, and take it out and turn it over to the sheriff and put it in a safe place. It covers property hidden in an apartment in the car, or little pockets and things of that kind, and which cannot be seen. I don't think that language is intended to cover property, personal property that is placed out in the car and that can be easily seen, but I think the clause in there is to protect them from property they cannot see simply by looking in the car, and which property may be under the seat or something of the kind. * * *

"And I charge you that if they took it where they could reasonably see it, then they had no right to take it, and it would be a trespass against this man, and if you find he has been damaged, then in addition to such actual damages as he may be entitled to you can find against the defendant such an amount of punitive damages as you think would be a proper amount to assess against them and punish them for a willful invasion of the right of Mr. Sanders, and prevent other people from doing likewise in the future."

In the construction of contracts, Courts are governed by the following general rules:

"The words of a contract will be given a reasonable construction, where that is possible, rather than an unreasonable one, and the Court will likewise endeavor to give a construction most equitable to the parties, and which will not give one of them an unfair or unreasonable advantage over the other. So that interpretation which evolves the more reasonable and probable contract should be adopted, and a construction leading to an absurd result should be avoided." 13 C. J., § 511, p. 540.

"Even an apparently unambiguous contract may be rendered ambiguous and open to construction if its words, taken literally, lead to absurdity or illegality when applied to the facts." *Clappenback v. New York L. Ins., Co.,* 136 Wis., 626, 118 N. W., 245, 246. 13 C. J., § 481, p. 521.

" 'In construing a contract, the Court will ascertain the intention of the parties, and to that end will, as far as possible, ascertain the situation of the parties, as well as the purposes had in view at the time the contract was entered into.' *Merrill-Ruckgaber Co. v. U. S.,* 49 Ct. Cl., 553, affirmed 241 U. S., 387, 36 S. Ct., 662, 60 L. Ed., 1058.

" 'Under the rule that a contract should receive a reasonable construction to execute the real intention of the parties, if a given act is not within such intention, it should not be held to be so merely because it is within the letter of the

written instrument.' *Taber Lumber Co. v. O'Neal,* 160 F., 596, 87 C. C. A., 498.

" 'Instruments should receive a sensible and reasonable construction and not such a construction as will lead to absurd consequences or unjust results.' *Fairbanks v. Twin City Supply Co.,* 170 N. C., 315, 86 S. E., 1051." *Chatfield-Woods Co. v. Harley,* 124 S. C., 280, 117 S. E., 539, 541.

A principle of construction which is also well settled is, that where one construction would make a contract unusual and extraordinary, and another construction, equally consistent with the language employed, would make it reasonable, fair, and just, the latter construction must prevail. *Stein v. Archibald,* 151 Cal., 220, 90 P., 536.

In the case at bar the subject-matter of the contract and the situation of the parties, to say the least, raise substantial doubt that it was contemplated by the parties that the seller would not be liable in damages, if in repossessing the car, upon breach of the conditions of the mortgage, it seized and carried away articles of personalty bestowed in the car and plainly visible and in no wise connected with the property covered by the contract or chattel mortgage. The defendant admits that the mortgage constituted a lien over the car only, and it relies solely upon the provision under discussion for its legal right to take into its possession the personal property found therein.

In repossessing this car, whether by judicial proceeding or by its own act, the defendant, under its mortgage had no right whatever to deprive the plaintiff of any visible property, and the only purpose and effect of the quoted provision in the contract, relied on by the defendant, was to protect it from liability for taking possession of property which would require a minute checking and searching of the interior of the car to discover, such as property which might not be readily visible, which might be in pockets or compartments of the car, or under the seats.

The trial Court was correct in holding that the contract did not authorize the seizure and carrying away of other property plainly visible to any one taking possession of the car.

To construe this provision of the contract literally, as contended for by the defendant, would inevitably lead to absurd consequences, illegality, and unjust results when applied to the facts.

The trial Court illustrated the utterly unreasonable character of this provision in this way: "A man might step off from the car temporarily, and have his hat and coat and part of his clothing in there, and they drive off with it. A man, to take an extreme case, might be in the car and leave his clothes in it. That is an extreme case, of course, but to take the car and drive off with his clothes open to view and leave him naked—that might happen, although it is an extreme case. It might happen if this thing was literally construed. Where the property is open to view, and they can see it, I don't think they would have a right to take it, and if they do they are trespassers, and if they are trespassers punitive damages would lie."

This illustration, however, does not at all picture an improbable happening.

If a car, with the owner's clothing in it, should happen to be seized, as it well might be, while its owner was in bathing at the old swimming hole, or at some isolated point on the beach, would not such an unforeseen and disastrous occurrence lead to absurd consequences and unjust results?

Or, suppose the mortgaged property should be a motor-truck loaded with perishable freight, and should be seized by the mortgagee while it was temporarily parked, and truck and freight should be taken away under such a mortgage provision, and the perishable freight not returned for five days, as was the case here, could any reasonable person hold to the belief that such an unusual and extraordinary proceeding was within the contemplation of the parties?

Or, suppose that a man with his family should drive to town to shop, and he should leave his mortgaged car parked on some city street containing the newly-purchased articles, could it be held reasonable or contemplated, that such a mortgage provision would entitle the mortgagee to stalk him from place to place until the car was found, so temporarily parked, and then seize it, and make off with it, and his goods?

These illustrations could be multiplied *ad infinitum*.

Under the principles of law herein stated, the contract must be given that construction which is consonant with common sense, and a literal construction in this case will not bring that about.

The trial Court committed no error in submitting the case to the jury upon the question of actual and punitive damages. There was sufficient evidence for the jury to conclude, as it did, that the defendant acted willfully, and in a high-handed, oppressive manner, and in wanton disregard of the property rights of the plaintiff. *Duckett v. Pool,* 34 S. C., 311, 13 S. E., 542; *Thomasson v. Southern Ry.,* 72 S. C., 1, 51 S. E., 443.

"Not only is the conscious invasion of the rights of another in a wanton, willful, and reckless manner an act of wrong, but also when the wrongdoer does not actually realize that he is invading the rights of another, provided the act is committed in such a manner that a person of ordinary reason and prudence would say that it was a reckless disregard of another's rights." Cited and approved in *Bailey v. Smith,* 132 S. C., 212, 213, 128 S. E., 423; *Norris v. Greenville, S. & A. Ry. Co.,* 111 S. C., 322, 97 S. E., 848, 850.

The same rule was announced by this Court in *Tolleson v. Ry. Co.,* 88 S. C., 7, 70 S. E., 311; *Elberle v. Southern Ry. Co.,* 98 S. C., 89, 79 S. E., 793; *Geddings v. A. C. L. R. Co.,* 91 S. C., 477, 486, 75 S. E., 284. Also see *Anderson v. A. C. L. R. Co.* (S. C.), 184 S. E., 164.

In view of the conclusions reached by us, we do not deem it necessary to determine two other questions raised by the appeal, and these are: Whether the contract in question violates public policy; and whether the Circuit Judge should have submitted to the jury the issue as to whether or not in seizing the automobile, under the circumstances related, the defendant committed a breach of the peace, a decision on these issues not being essential to a determination of this case.

We agree with the defendant, that the testimony in the case would support a verdict for actual damages only in the sum of $100.25. The only actual damage proved was the loss of two $50.00 bills, and a farm account book, valued at 25 cents. The difference between this amount and the sum of $231.00, to wit, the sum of $130.75, should be remitted.

It is therefore ordered that a new trial be granted, unless the plaintiff shall remit on the record the said excess in the verdict, to wit, the sum of $130.75, within fifteen days from the sending down of the remittitur. If this amount shall be remitted, this provision as to a new trial becomes nugatory, and the judgment of the Circuit Court in such event stands affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER.

MR. JUSTICE CARTER did not participate.