Ronald Dale TUMLINSON, Plaintiff,

v.

NORFOLK & WESTERN RAILWAY
CO., Third Party Plaintiff/Appellant,

v.

W.M. BRODE COMPANY, Third Party
Defendant/Respondent.

No. WD 41172.

Missouri Court of Appeals,
Western District.

June 20, 1989.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 1, 1989.

Application to Transfer Denied
Sept. 12, 1989.

Richard E. McLeod, Robert T. Adams,
Shook, Hardy & Bacon, Kansas City, for
third-party plaintiff/appellant.

Robert O. Jester, Duane E. Butler, Ensz
and Jester, Kansas City, for third-party
defendant/respondent.

Ronald Dale Tumlinson, pro se.

Before TURNAGE, P.J., and CLARK
and FENNER, JJ.

TURNAGE, Presiding Judge.

Norfolk & Western Railway Co. filed a
third party petition against W.M. Brode
Company seeking indemnification for the
amount it had paid Ronald Tumlinson as a
result of a railroad crossing accident. Trial
to the court resulted in a judgment in favor
of Brode and Norfolk appeals.

The facts were stipulated. In May, 1985,
Norfolk entered into an agreement with
Brode for the replacement of a bridge over
Wakenda Creek near Wakenda in Carroll
County.

> Section 5.1 of the agreement provides:
> Contractor shall indemnify and hold
> harmless the Company, its officers,
> agents and employees, from and against
> any and all liability, demands, claims,
> losses, costs and expenses arising from
> or in connection with (i) any claims for
> personal injury and/or property loss or
> damage to whomsoever or whatsoever
> occurring or arising in any manner out of
> or in connection with the work, this Con-
> tract, any act or omission of Contractor,
> its officers, agents or employees or the
> presence of Contractor, its officers,
> agents or employees upon or about the
> property or premises of Company, wheth-
> er or not negligence on the part of Com-
> pany, its officers, agents or employees
> may have caused or contributed to such
> injury, death, loss or damage; ....

Section 1.4 of the agreement defined the
word "work" as "all or any part of the
Contractor's obligations and other matters
referred to in Section 1.1." Section 1.1
required Brode to furnish all "materials,
superintendence, labor, equipment, tools,
supplies, permits, signs and transportation
necessary to perform" and complete the
replacement of the bridge.

In July, 1985, Brode had purchased from Howard Quarries a quantity of rock to be used in the construction of the bridge. Howard had hired Alan Wilson who owned a dump truck to deliver the rock. On July 10, 1985, Tumlinson, who had been hired by Wilson, was driving a Wilson truck to deliver the rock to Brode at the construction site. As Tumlinson drove his truck on to a Norfolk crossing about three and one-eighth miles from the construction site he collided with a Norfolk train. The crossing was about 2.2 post miles along the railroad from the construction site.

Tumlinson filed suit against Norfolk and Norfolk filed its third party petition which is the subject of this appeal. Norfolk later settled the Tumlinson law suit by paying $38,000 to Tumlinson and expended the sum of $24,024.91 in attorney fees and expenses. Thus, the suit in question sought the sum of $62,024.91 from Brode.

The theory of Norfolk's third party petition was that Brode indemnified Norfolk for any damages Norfolk paid for claims arising out of or in connection with the work. Norfolk contends Brode had the obligation to furnish the transportation of materials to the construction site, and since Tumlinson was delivering rock for the construction, the accident arose out of and in connection with the rock.

The trial court found the contract to be ambiguous and admitted the testimony of W.M. Brode as to the meaning of the indemnification clause within the railroad construction industry. Brode testified that indemnity agreements such as the one in this case applied only to accidents or loss occurring within the project limits. He described the project limits here as being the railroad right-of-way line and each end of the bridge. The accident obviously took place well beyond those limits.

Norfolk did not offer any evidence contrary to the Brode testimony as to the generally accepted meaning of the indemnity agreement within the railroad construction industry.

Norfolk contends that the language of the agreement is clear and unambiguous. It contends that the language covers any accident occurring anywhere in the country involving transportation of material to the construction site if Norfolk were involved and were held liable for the accident. Brode also testified that steel for the construction project was shipped by rail from Ohio. During oral argument counsel for Norfolk contended that Brode would be liable under the indemnity agreement if an accident occurred anywhere between Ohio and the construction site during the transportation of the steel. It is possible to hypothesize situations which illustrate Norfolk's theory. If the steel beams were loaded on Norfolk railroad cars and during shipment the beams came loose as the train passed over a highway and struck a bus carrying fifty people, Norfolk would have the right to have Brode indemnify it for all damages paid as a result of injury or death caused to the passengers. Norfolk contends the agreement is not ambiguous and the words used must be given their literal meaning. Norfolk says the words used do not limit the duty of Brode to indemnify to accidents occurring in any particular location. Norfolk concludes that Brode would be required to indemnify it for the accident just hypothesized.

In *Sanders v. General Motors Acceptance Corp.*, 180 S.C. 138, 185 S.E. 180, 182[1] (1936), the court stated several general rules governing the construction of contracts. Among these:

'Even an apparently unambiguous contract may be rendered ambiguous and open to construction if its words, taken literally, lead to absurdity or illegality when applied to the facts.' (Quoting from *Clappenback v. New York L. Ins. Co.*, 136 Wis. 626, 118 N.W. 245, 246, and 13 C.J., § 481.p.521.

The same rule is quoted in 17A C.J.S. *Contracts* § 294 P.36 (1963).

*Sanders* refused to give literal effect to a chattel mortgage which gave the mortgagee the right to seize a car on default and take all of the personal property therein. The court gave several examples of the absurd results which a literal reading of the mortgage would produce.

An absurdity is a result which is contrary to reason or which "could not be attributed to a man in his right senses." *The State v. Hayes,* 81 Mo. 574, 585 (1884).

Brode contends that if the contract were read literally it would include the above stated hypothesis. This court finds that under the rule stated in *Sanders* the agreement in this case becomes ambiguous because the words taken literally lead to absurd results. It is difficult to imagine a more absurd result than to impose liability on Brode under the facts of the above mentioned hypothesis. Yet that is the result Norfolk contends is required under this agreement. Under the literal meaning of the words used, Brode was liable to Norfolk every time any material for the project began its journey to the site, regardless of the distance from the site. If Norfolk could become liable, then Brode could. Thus, the financial well being of Brode was placed on the line from the time the steel left Ohio until it reached the project limits if it were carried by Norfolk, or if a truck carrying it came into contact with a Norfolk train. The liability of Brode was completely at the mercy of the conduct of others who were acting without the knowledge or control of Brode.

The words of the indemnity taken literally lead to an absurd result which invokes the rule of ambiguity and which allows the court to construe the contract according to the intent of the parties. The only evidence of intent was the testimony of Brode that the indemnity agreement applied only within the project limits. The court did not misapply the law and the judgment is supported by the evidence.

The judgment is affirmed.

CLARK, J., concurs.

FENNER, J., dissents in separate dissenting opinion.

FENNER, Judge, dissenting.

I respectfully dissent.

The terms of the contract between Norfolk & Western and Brode relevant to the question herein are as follows:

Section 5.1 *Indemnity*

*Contractors [Brode] shall indemnify and hold harmless the Company* [Norfolk & Western] *... from and against any and all liability ... arising from or in connection with* (i) *any claims for personal injury ... and/or property loss or damages to whomsoever or whatsoever occurring or arising in any manner out of or in connection with this Work,* this contract, any act or omission of contractor, its officers, agent or employees upon or about the property or premises of Company, *whether or not negligence on the part of Company,* its officers, agents or employees, may have caused or contributed to the injury ...

(Emphasis added)

Section 1.4 *Definitions*

"Work" shall mean all or any part of the Contractor's obligations and other matters referred to in Section 1.1.

Section 1.1 *Work*

Except as otherwise provided herein, *Contractor shall furnish,* at Contractor's costs, *all materials,* superintendence, labor, equipment, tools, supplies, permits, signs *and transportation necessary to perform,* and Contractor shall perform, construct and complete, the following *work:*

Contractor shall replace Bridge Number 516 near Wakenda, MO....

(Emphasis added)

On appeal Norfolk & Western argues that the trial court erred in considering extrinsic and parol evidence because the terms of the contract were clear and unambiguous and contained entirely within the four corners of the document itself and as a matter of law the indemnity clause of the contract was applicable to Tumlinson's claim. Brode argues in support of the trial court's holding that the terms of the indemnity agreement were ambiguous since they failed to define the scope of Brode's obligation to indemnify Norfolk & Western. Brode argues that a latent ambiguity exists under the terms of the contract.

The standard for review of this appeal is as set forth in *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo.banc 1976), which re-

quires that the judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law.

Generally, evidence of oral agreements made prior to, or contemporaneous with a written contract are not admissible to vary or contradict the terms of an unambiguous and complete written instrument. *Rufkahr Construction Co. v. Weber*, 658 S.W.2d 489, 497 (Mo.App.1983). Whether or not the language of a contract is ambiguous is a question of law for the trial court. *Bergmann v. Bergmann*, 740 S.W.2d 215, 216 (Mo.App.1987). No deference is due the trial court's judgment where the resolution of a controversy is a question of law. *MFA Mutual Insurance Company v. Home Mutual Insurance Company*, 629 S.W.2d 447, 450 (Mo.App.1981). To determine the existence of ambiguity, the court determines the reasonable meaning or meanings to be attributed to the contract language in the context of the agreement. When that process yields more than a single meaning, the document is ambiguous. *Vandever v. Junior College District of Metropolitan Kansas City*, 708 S.W.2d 711, 717 (Mo.App.1986). An ambiguity is patent if it is shown by analysis of the language of the agreement and latent when the language is plain on its face but becomes uncertain or ambiguous when applied. *Id.*

The indemnity provisions of the contract herein are not ambiguous on their face and likewise not ambiguous when applied. The contract specifically states under Section 5.1 that Brode was obligated to indemnify Norfolk & Western for "any claims ... to whomsoever or whatsoever occurring or arising in any manner, out of, or in connection with the Work ..." The "Work" is defined in Section 1.1 of the contract to include "materials ... and transportation necessary" to replace the bridge. Rather than limiting indemnity to the job site or the specific work actually performed on the bridge, the contract by its plain language requires that Brode is to indemnify the railroad for numerous activities, including transportation, associated with the replacement of the bridge, regardless of location of any accident related thereto. The contract does not contain any language to limit indemnity to accidents involving transportation of materials only at the job site or any other limited area. To construe the language of the contract otherwise is to re-write the contract so as to limit indemnity to injuries which occur within an area not set forth in the contract. When Tumlinson's accident occurred he was transporting materials necessary in replacing the bridge and therefore by the terms of the contract Brode is liable to indemnify Norfolk & Western.

Where no ambiguity exists in a written agreement the court cannot go outside the agreement and make a new contract for the parties. *Marshall v. Estate of Marshall*, 529 S.W.2d 914 (Mo.App.1975).

In the context of this agreement it does not create ambiguity to say that Norfolk & Western was indemnified against claims arising from the transportation of materials across its tracks at the location of the Tumlinson accident. It creates no confusion to say, and it is reasonable to believe, that Norfolk & Western realized that there would be increased activity across its tracks at the location of the Tumlinson accident and sought to be indemnified by Brode.

Even under the authority of *Sanders v. General Motors Acceptance Corp.*, 180 S.C. 138, 185 S.E. 180, 182 (1936), as cited by the majority, applying the facts of the case at bar to the language of the contract at issue does not create an absurdity which would render the contract ambiguous. The mere fact that hypothetical situations can be conceived which would be more arguably absurd has no application to the case which actually presents itself.

In my opinion the judgment of the trial court should be reversed.