[Cite as *Laboy v. Grange Indemn. Ins. Co.*, 2014-Ohio-1516.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 100116**

---

# PHILIP LABOY, ET AL.

PLAINTIFFS-APPELLANTS

vs.

# GRANGE INDEMNITY INSURANCE CO., ET AL.

DEFENDANTS-APPELLEES

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-773808

**BEFORE:** Stewart, J., S. Gallagher, P.J., and E.A. Gallagher, J.

**RELEASED AND JOURNALIZED:** April 10, 2014

**ATTORNEYS FOR APPELLANTS**

Thomas J. Connick
Dubyak Connick Sammon & Bloom, L.L.C.
3401 Enterprise Parkway, Suite 205
Cleveland, OH   44122

Edward W. Cochran
Cochran & Cochran
20030 Marchmont Road
Shaker Heights, OH   44122

**ATTORNEYS FOR APPELLEE**

Michael K. Farrell
David A. Carney
Baker & Hostetler, L.L.P.
PNC Center
1900 East Ninth Street, Suite 3200
Cleveland, OH   44114

Mark A. Johnson
Rand L. McClelland
Baker & Hostetler, L.L.P.
65 East State Street, Suite 2100
Columbus, OH   43215

MELODY J. STEWART, J.:

{¶1} Plaintiffs-appellants Philip and Heidi Laboy carried automobile insurance issued by defendant-appellee Grange Mutual Casualty Company ("Grange"). The policy contained a medical payments clause that said Grange would pay the lesser of reasonable medical expenses or "any negotiated reduced rate accepted by a medical provider." When the Laboys were injured in an automobile accident, they submitted their medical bills not only to Grange, but to their health insurance company, Medical Mutual of Ohio. Medical Mutual reimbursed the Laboys' health care providers at negotiated rates; Grange reimbursed those same health care providers at higher rates. After all the bills were paid, Grange exercised its contractual right of subrogation against the Laboys for the medical payments it made on their behalf. The Laboys complained that Grange violated the terms of the policy by paying a higher rate than that negotiated by Medical Mutual for the same bills. They claimed that Grange's higher rate of reimbursement ($891.99) meant that Grange could seek a higher amount in subrogation, which would lead to a corresponding reduction in the net proceeds they received from their settlement with the tortfeasor.

{¶2} The court rejected the Laboys' arguments. It found that the Laboys' interpretation of the medical payments clause would lead to the absurd result that the obligation to reimburse medical expenses at a negotiated reduced rate accepted by "a medical provider" would result in Grange having to reimburse medical expenses at a rate negotiated by any medical provider, anywhere, regardless of whether the Laboys had a

right, or access, to that rate. It found that a more reasonable interpretation of the policy language was that the language "any negotiated reduced rate accepted by a medical provider" implies that "Defendant Grange has to have access to that negotiated rate by contracting with the medical provider." Grange negotiated its own rate with PPOM Ohio network and made that rate available to its insureds if they chose to receive medical treatment in that network. The court found no evidence to show that Grange had access to the same negotiated rate charged by Medical Mutual because Grange was not a party to the contracts between Medical Mutual and its providers. On that basis, the court granted summary judgment to Grange and this appeal followed. The sole assignment of error contests the court's ruling.

{¶3} The language at issue appears in a "limit of liability" section of the policy. It states:

B. We will pay under Part B - Medical Payments Coverage, the lesser of:

1. reasonable expenses incurred by the insured for necessary medical and funeral services because of bodily injury; or

2. any negotiated reduced rate accepted by a medical provider.

{¶4} When reviewing language used in an insurance policy, we give words their plain and ordinary meaning unless another meaning is clearly apparent from the contents of the policy. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph two of the syllabus.

{¶5} The parties give different interpretations of the policy. Grange maintains that Section (B)(2) should mean any reduced rate negotiated *by Grange* that is accepted

by a medical provider (i.e., its PPOM network); the Laboys maintain that the clause should mean a lesser negotiated rate that Grange has access to through its insured's health insurer (i.e., Medical Mutual). Their differences center on whether Grange has "access" to reduced negotiated rates accepted by medical providers (Grange says it does not because it lacks privity; the Laboys say it does through reduced negotiated rates by its insurer, Medical Mutual). These differing interpretations of the policy suggest that Section (B)(2) is ambiguous. On its face, it is not.

{¶6} Section (B)(2) requires Grange to pay *any* negotiated reduced rate accepted by a health care provider. Taken literally, this section clearly indicates that Grange's duty to pay a negotiated reduced rate is without qualification and applies regardless of geographic proximity or even privity of contract. It would apply to rates negotiated on the other side of the globe or to the rate negotiated by someone who perhaps persuades a medical provider to accept less than that provider's normal rate for services. The words are plain. There is no ambiguity.

{¶7} The difficulty with Section (B)(2) is that it is so all-encompassing, it would be impossible for Grange to comply. This brings into application the rule that "[e]ven an apparently unambiguous contract may be rendered ambiguous and open to construction if its words, taken literally, lead to absurdity or illegality when applied to the facts." *Clappenback v. New York Life Ins., Co.*, 136 Wis. 626, 630, 118 N.W. 245 (1908); *United Refining Co. v. Jenkins*, 410 Pa. 126, 138, 189 A.2d 574 (1963); *Sanders v. Gen. Motors Acceptance Corp.*, 180 S.C. 138, 185 S.E. 180 (1936). When this kind of absurdity

exists, the court should engage in fact-finding to give the contract the most sensible and reasonable interpretation. *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132, 509 N.E.2d 411 (1987).

{¶8} The trial court ruled that Grange's interpretation of the policy, that Section (B)(2) applies only to reduced rates negotiated by Grange and accepted by medical providers in their network, was "the only reasonable interpretation" of the policy, but it did so on the mistaken basis that the Laboys were arguing that Section (B)(2) should be applied as written and be found to mean any negotiated rate regardless of geography. The Laboys' brief in opposition to Grange's motion for summary judgment made it clear that "Grange does, in fact, have access to a lesser negotiated rate via medical providers who have agreed with [sic] Laboys' medical insurer to provide a discounted rate." Brief In Opposition to Motion for Summary Judgment at 12. Furthermore, the court did not consider the merits of the Laboys' argument when deciding how to interpret the policy and did not engage in fact-finding to ensure the most sensible and reasonable interpretation of the policy. This error was doubly prejudicial because the Laboys, as the insureds, were entitled to have any ambiguity in the policy construed most favorably to them. *Fed. Ins. Co. v. Executive Coach Luxury Travel, Inc.*, 128 Ohio St.3d 331, 2010-Ohio-6300, 944 N.E.2d 215, ¶ 8.

{¶9} We agree that interpreting Section (B)(2) to mean any negotiated reduced rate anywhere in the world would be an absurd interpretation. However, without the benefit of fact-finding, we are not convinced that interpreting the policy as Grange asserts is the

only reasonable interpretation. There are genuine issues of material fact and Grange has not demonstrated that it is entitled to judgment as a matter of law. We, therefore, sustain the assigned error.

{¶10} This cause is reversed and remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellants recover of appellee their costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

MELODY J. STEWART, JUDGE

EILEEN A. GALLAGHER, J., CONCURS WITH
SEPARATE OPINION;
SEAN C. GALLAGHER, P.J., CONCURS IN
JUDGMENT ONLY

EILEEN A. GALLAGHER, J., CONCURRING:

{¶11} I concur with the majority but write separately to express my concerns regarding the initiation of this case.

{¶12} The Cuyahoga County Court of Common Pleas case designation sheet in this case, completed by plaintiff's counsel, identifies this case as a "Commercial Docket" case.

{¶13} This matter, however, is not a case appropriate for a commercial docket pursuant to the parameters set out by the Ohio Supreme Court.

{¶14} The commercial dockets were established to focus on litigation between business entities or a business entity and an owner, sole proprietor, shareholder, partner or member of a business entity.

{¶15} A class action lawsuit is eligible for the commercial docket if it qualifies under one of the several provisions under Sup.R. 49.05 for the Courts of Ohio. This case does not so qualify.

{¶16} In order to maintain the integrity of commercial dockets as envisioned, I suggest that plaintiffs, as well as commercial docket judges, be cautious in their identification of commercial docket cases and the maintenance of a case that is inappropriate on a commercial docket.